**UNITED STATES of America**

v.

**TO RAY TAN, and Ming Hoi Wong, Defendants.**

**No. 88 CR 93.**

United States District Court, E.D. New York.

Dec. 2, 1988.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. (Thomas P. Milton, Asst. U.S. Atty., of counsel), for U.S.

Jeanne B. Philby, New York City, for To Ray Tan.

Arthur Mass, Mass and Rudin, New York City, for Ming Hoi Wong.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

The Court has received the Trial Transcript of the suppression hearing conducted by the Honorable A. Simon Chrein, United States Magistrate, which incorporates the Magistrate's Report and Recommendation to this Court. At the conclusion of the testimony by Drug Enforcement Agents involved in the arrests of defendants To Ray Tan and Ming Hoi Wong, the Magistrate made findings of fact and conclusions of law. Because the Magistrate found the testimony of the witnesses credible, this Court adopts the Magistrate's findings of fact as its own. As to defendant To Ray Tan, neither party has filed written objections regarding the Magistrate's conclusions of law pursuant to 28 U.S.C. § 636(b)(1); Local R.Mag.P. 7. Therefore, after a *de novo* review, the Court adopts the Magistrate's conclusions of law regarding defendant Tan as the opinion of this Court. As to defendant Ming Hoi Wong, both the defendant and the government take issue with the Magistrate's conclusions of law and, therefore, have filed objections. Defendant Wong objects to the Magistrate's holding that the agents had the specific and articulable suspicion required to conduct an investigatory stop of the vehicle driven by defendant Wong. The government objects to the Magistrate's holding that although the agents were permitted to conduct an investigatory stop, they were not justified in making a protective search of the passenger compartment of the vehicle for weapons during the stop.

## FACTS

At approximately 10:00 p.m. on Thursday, January 21, 1988, DEA agents arrested two individuals Fanny Rebbeca Lei and Danny Chion Lai, when they accepted luggage known to contain 4½ kilograms of heroin. Both admitted that they had been hired to act as couriers in transporting the heroin into the United States. They informed the arresting agents that the individual who sent them had told them to stay at the Marriott Hotel and await contact from an individual who would pick up the heroin. They also told the agents that they were to receive $10,000 each for delivering the heroin. Both Lei and Lai then indicated that they were willing to cooperate and assist the agents in apprehending the individual or individuals who would be coming to pick up the heroin and pay the courier fees.

At approximately 8:00 a.m., Sunday, January 24, 1988, Lei and Lai were informed that someone would be coming to the hotel shortly to make the "pickup." Approximately one hour later, defendant To Ray Tan was observed entering Lei's and Lai's hotel room. After making the pickup and leaving the hotel room, defendant Tan was arrested with the luggage containing 4½ kilograms of heroin.

Other agents immediately conferred with Lei and Lai regarding what defendant To Ray Tan had said about the payment of their courier fees. Lei and Lai advised that Tan had stated that after he went downstairs with the heroin, the money would be brought up. These agents communicated what they had been told to surveillance agents downstairs in the hotel parking lot and advised them to be on the lookout for one or more individuals outside the hotel or in the nearby vicinity.

Shortly thereafter the surveillance agents saw a red Mercury Merkur drive past the entrance to the hotel parking lot. The agents observed that the car was being driven very slowly and that there were two oriental males in the front seat. One of the agents recalled that he had seen the same car a few minutes earlier.

A few minutes later, surveillance agents observed the same red Merkur once again driving very slowly past the parking lot with the two oriental males inside looking

from side to side. On this third sighting of the red Merkur, the driver of one of the surveillance cars maneuvered his vehicle directly in front of the red Merkur. The two agents inside the car, Agents Loo and Atwell got out and identified themselves as police. As they approached the red Merkur, agent Loo observed the individual on the passenger side, subsequently identified as Cheuk Fun Lau, lean forward as if reaching for something. Fearing that there might be a weapon involved, the agents pointed their guns at the individuals inside the car and told them not to move.

The agents then took Lau as well as the driver, subsequently identified as the defendant Ming Hoi Wong, out of the vehicle. Agent Loo immediately entered the passenger side of the vehicle to check for weapons. The agent first searched the passenger side floor of the automobile and found nothing, and then he searched the glove compartment—the areas within Lau's reach from where he was sitting in the automobile. Inside the glove compartment, which was unlocked, the agent saw a red plastic bag which felt like it contained something hard inside. The agent took out the bag, opened it, and found four bundles of cash inside, amounting to $20,000. Based on this finding, Lau and Wong were placed under arrest.

On these findings of fact, the Magistrate held that the agents were justified in stopping defendant Wong and Lau to investigate whether they were involved with defendant Tan. The overall circumstances gave rise to the requisite articulable suspicion required by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The circumstances to which the Magistrate referred were the following: defendant Wong was driving slowly around the hotel; Lau and Wong were apparently searching for someone, as indicated by their constant looking from side to side; and the agents knew that an individual or individuals were awaiting defendant Tan.

As to the agent's search of the automobile, the Magistrate held that the agent was not justified in making such a search incident to this *Terry* stop and, therefore, the Magistrate suppressed the $20,000 found in the glove compartment. The Magistrate stated that for all practical purposes, Wong and Lau could not gain access to any weapons in the automobile because they were being guarded by three agents. The Magistrate recognized that the basis of the agent's search was his observance of Lau bending forward in the passenger seat as the car stopped, and the agent's fear that Lau may have been reaching for a weapon. Nonetheless, the Magistrate held that the search of the glove compartment, or the automobile for that matter, was not necessary because there was no immediate threat to the agents.

## DISCUSSION

■ Defendant Wong objects to the Magistrate's recommendation that there was a specific and articulable suspicion for the agents to conduct an investigatory stop of the vehicle driven by Wong. The objection is overruled. This Court finds, after a *de novo* review, that there is ample evidence to support the agent's suspicion that these individuals were awaiting Tan and, therefore, to stop the vehicle driven by Wong for investigation. *See Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *Terry*, 392 U.S. 1, 88 S.Ct. 1868. Therefore, the Magistrate's opinion will be adopted as this Court's own.

The government objects to the Magistrate's recommendation to suppress the $20,000 found in the glove compartment during the investigatory stop. This objection raises the issue as to whether police officers, DEA Agents, and the like, may conduct protective searches, incident to a *Terry* stop, when they have a reasonable belief that the suspect poses a danger.

The Supreme Court in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) squarely addressed this issue. The Court held that police are permitted to conduct an area search of an automobile's passenger compartment to uncover weapons, so long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous. *See id.*, 463 U.S. at 1051, 103 S.Ct. at 3482. The

Court reasoned that police investigations at close range, such as those involved during car stops, leave officers particularly vulnerable "because a full custodial arrest has not been effected, and the officer must make a 'quick decision as to how to protect himself and others from possible danger....'" *See Long*, 463 U.S. at 1051, 103 S.Ct. at 3482 *quoting Terry*, 392 U.S. at 28, 88 S.Ct. at 1883.

The Court's findings, therefore, hinged on a determination of whether the officers had an articulable and objective suspicion that the suspect was dangerous. The Court, in *Long*, held that the overall circumstances surrounding the stop clearly justified the officer's belief that Long posed a danger if he were permitted to re-enter his vehicle. "The hour was late and the area rural. Long was driving his automobile at excessive speed, and his car swerved into a ditch. The officers had to repeat their questions to Long who appeared to be under the influence of some intoxicant." *See id.*, 463 U.S. at 1051, 103 S.Ct. at 3481. Finally, the officers observed a knife in the interior of the car into which Long was about to re-enter. *See id.* The Court determined that based on the exigencies of the situation, it was reasonable for the officers to conduct a search "limited to those areas in which a weapon may be placed or hidden." *See id.*, 463 U.S. at 1050, 103 S.Ct. at 3481.

The Court, however, did not limit its holding to situations where the suspect was about to re-enter his vehicle. The Court recognized other instances where officers were justified to conduct a protective search during a *Terry* stop. The Court stated that when officers have an articulable suspicion that the suspect is dangerous, they may conduct a search even if the suspects are "in the custody" of officers. The Court reasoned that a suspect could break away from such custody and retrieve a weapon from his automobile. Therefore, a protective search was necessary to protect the officers involved and others nearby.

Alternatively, the Court stated that a suspect detained incident to a *Terry* stop

posed the particular problem that if the stop did not develop into an arrest, the suspect would be permitted to re-enter his vehicle thereby gaining access to any weapon inside.. The Court determined that to prevent a search in these circumstances would expose officers to unnecessary danger.

■ An application of the principles of *Long* to the instant case mandates a holding that the $20,000 found in the glove compartment should not have been suppressed.

As discussed, there was ample evidence to justify the agent's investigatory stop— the slow driving around the hotel; the search for someone; and the agent's knowledge that defendant Tan was not working alone. In addition, when the agents stopped Wong's car, Agent Loo, whom the Magistrate found credible, testified that he observed Lau bend forward in the passenger seat and do something. The agent testified that he could not see Lau's hands but he suspected, based on his experience, that Lau was reaching for a weapon. This factor is bolstered by the fact that the agent knew he was dealing with a drug-related transaction. The Second Circuit has repeatedly noted that weapons are often carried and used during narcotics transactions. *See United States v. Nargi*, 732 F.2d 1102 (2d Cir.1984); *United States v. Oates*, 560 F.2d 45 (2d Cir.1977).

All of these factors establish that the agents had an objective and articulable suspicion that the suspects, particularly Lau, posed a danger to themselves and to passersby. Having found that the agents had the requisite suspicion, Agent Loo was entirely justified, pursuant to *Long*, to make the protective search of the automobile's passenger compartment for weapons. This included a search of "those areas in which a weapon may be placed or hidden," *see Long*, 463 U.S. at 1050, 103 S.Ct. at 3481, such as a glove compartment. In addition, contraband and other evidence found during the course of a legitimate *Terry* search should not be suppressed. *See id.*, 463 U.S. at 1051, 103 S.Ct. at 3481.

In sum, the $20,000 found in the red plastic bag during the course of the search should not be suppressed.

SO ORDERED.