**UNITED STATES of America**

v.

**James BECKER, Defendant.**

**No. 92–CR–170S.**

United States District Court,
W.D. New York.

May 14, 1993.

---

Dennis C. Vacco, U.S. Atty., Buffalo, NY, for the Government; Richard P. Maigret, Asst. U.S. Atty., of counsel.

Joseph J. Terranova, Buffalo, NY, for defendant.

## ORDER

SKRETNY, District Judge.

Whereas pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and by Order dated November 13, 1992, this Court referred all pretrial proceedings to Magistrate Judge Heckman for decision and order or report and recommendation; and

Whereas defendant, through counsel, moved to suppress a gun seized from the glove compartment of his vehicle prior to his arrest, as well as a statement made at the station house following his arrest; and

Whereas, on April 19, 1993, Magistrate Judge Heckman filed a report recommending that defendant's motion to suppress physical evidence and statements be denied; and

Whereas copies of Magistrate Judge Heckman's Report and Recommendation were mailed by the Clerk of the Court to counsel for the parties on April 21, 1993 and no objections to the Report and Recommendation have been received from either of the parties within ten (10) days from the date of its service, in accordance with 28 U.S.C. § 636(b)(1)(C) and Local Rule 30(a)(2), and

Whereas, after careful review of the Report and Recommendation, as well as the materials submitted by the parties,

IT HEREBY IS ORDERED, that this Court accepts the Magistrate Judge's Report and Recommendation in its entirety, including the authorities cited and the reasons given therein, and that defendant's motion to suppress is DENIED.

FURTHER, that counsel for the parties shall appear before this Court on Tuesday, May 18, 1993 at 9:00 a.m. Part IV, Mahoney State Office Building, 65 Court Street, Buffalo, New York.

SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

The Defendant has moved to suppress a gun seized from the glove compartment of his vehicle prior to his arrest, as well as a statement made at the station house follow-ing his arrest. This motion was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). For the reasons which follow, Defendant's motion should be denied.

## BACKGROUND

At approximately 2:30 a.m. on January 1, 1991, New York State Troopers Mark Jaroszewski and William Gibbons were on routine patrol in rural Genesee County in a marked patrol car. Both troopers were in uniform. Trooper Jaroszewski was driving the patrol vehicle and Trooper Gibbons was the passenger. They were headed northbound on Route 98 when they observed an older model pickup truck proceeding southbound on Route 98.

The troopers, utilizing radar, clocked the speed of the oncoming pickup truck at 62 mph. As the pickup truck passed the troopers' vehicle, Trooper Jaroszewski observed that the driver was a white male, fully bearded. Both troopers observed that the pickup truck did not have any tail lights, stop lights or license plate lights. At that point, Trooper Jaroszewski turned his vehicle around and pursued the truck.

The truck then increased its speed and made a right hand turn onto the entrance ramp toward the westbound lane of Route 20, which intersects Route 98 in that area. The truck did not signal its turn. The troopers followed the vehicle and activated their emergency lights. At this time, the truck made an illegal left hand turn onto the eastbound lane of Route 20, again without signaling. The troopers continued to follow and observed the truck make a right hand turn back down onto the northbound lane or entrance ramp of the northbound lane of Route 98, again without signaling. The troopers then pulled the vehicle over and parked 10–20 feet behind the truck.

Trooper Jaroszewski exited the police vehicle and approached the driver's side of the truck. At the same time, Trooper Gibbons activated the high-intensity spot light. Both troopers observed the driver of the truck exchange places with the passenger of the truck. Gibbons then left the vehicle and

approached the passenger side. As Trooper Jaroszewski approached the vehicle, he noticed that the individual now in the passenger seat of the truck (the former driver of the vehicle) was wearing a cutoff jean jacket and was displaying "the colors of a motorcycle group called the Kingsmen, who are pretty—we are pretty familiar within the Attica area" (J11).[1] He also noticed that the individual in the passenger seat of the truck moved his body down and forward so that his upper torso was momentarily out of sight. Trooper Jaroszewski testified that he "momentarily lost sight of him because he either moved forward or moved down to the area of the floorboards, the floor of the vehicle" (J13).

When the troopers arrived at the vehicle, with Jaroszewski on the driver's side and Gibbons on the passenger side, they observed the Defendant, James N. Becker, now in the passenger seat and a female, later determined to be Mr. Becker's wife, to be in the driver's seat. There was an eight to ten inch hunting knife on the dashboard of the truck. Both troopers testified that they were concerned about their safety, not only because of the presence of the knife, but also because of the furtive movements of the Defendant while in the passenger's position of the vehicle.

The Defendant and Mrs. Becker were asked to get out of the truck, and they both were patted down. Another knife was found in a sheath on Mr. Becker's hip.

With Trooper Gibbons watching the two individuals, Trooper Jaroszewski entered the truck and took custody of the large hunting knife on the dashboard. He also looked in the area of the floorboards of the vehicle below where Becker had been seated when Jaroszewski observed him leaning forward. He found the keys to the vehicle. He also opened the unlocked glove compartment, which was immediately in front of the area where the Defendant as a passenger was seated when his movements were observed. In the glove compartment, Jaroszewski found a .25 caliber pistol partially concealed in a work glove.

Trooper Jaroszewski removed the knife, handgun and keys from the vehicle and asked both of the Beckers if they had a permit for the handgun. When they replied that they did not, he informed them that they were under arrest for possession of a weapon.

The Beckers were taken back to the police patrol car and handcuffed. They were advised of their *Miranda* warnings by Trooper Gibbons. Both acknowledged that they understood their rights.

Both of the Beckers were transported by the troopers to the Batavia state police headquarters. Once back at headquarters, Trooper Jaroszewski advised Defendant of his *Miranda* warnings. The Defendant acknowledged that he understood the warnings.

After a few minutes in custody, at approximately 4:00 a.m., Mr. Becker requested the opportunity to make a phone call. There was no telephone in the room where Mr. Becker was secured, so Trooper Jaroszewski brought Becker into the patrol room where a telephone was located that he could utilize. Neither Trooper Jaroszewski nor Trooper Gibbons was aware of whom Mr. Becker was calling or for what purpose. Trooper Jaroszewski was approximately two to three feet from Mr. Becker during the phone call and Trooper Gibbons was approximately five to ten feet away. During the conversation on the phone, Mr. Becker was overheard by both troopers as stating, "I am at the trooper's barrack, I got popped for possession of a handgun, a .25, do you know a good lawyer, get a hold of someone for me." This statement was made voluntarily and not the result of any interrogation of the Defendant by either trooper.

Becker was subsequently charged in the present indictment with a violation of Title 18, U.S.C. § 922(g), unlawful possession of a firearm by an individual who had previously been convicted of a felony.

---

1. The designation "J" refers to the hearing held on January 7, 1993. The designation "F" refers to the hearing held on February 4, 1993.

## DISCUSSION

There were two arguments presented by the Defendant on this motion. The first is that the search of the glove compartment of the vehicle was not supported by probable cause or by any other exception to the warrant requirement of the Fourth Amendment. The second is that the statement made at the station house was a product of an illegal search and seizure and therefore must be suppressed as the fruit of a poisonous tree. For the reasons set forth below, neither of these arguments has merit.

### A. The Search Of The Glove Compartment

The Defendant readily concedes that the troopers had the authority to order the occupants of the pickup truck to get out of the vehicle in order to investigate possible traffic violations. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). However, Defendant argues that the search of the glove compartment was an illegal search not justified by probable cause.

A review of the pertinent facts set forth above makes clear that the search of the glove compartment of the truck was a valid protective search conducted for the personal safety of Troopers Jaroszewski and Gibbons during a lawful investigatory stop of the occupants of the vehicle. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). As stated by the Supreme Court in *Michigan v. Long*:

> Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the dangerous and that the suspect may gain immediate control of weapons. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." If a suspect is "dangerous," he is no less dangerous simply because he is not arrested.

*Id.* at 1049–50, 103 S.Ct. at 3480–81 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 27, 88 S.Ct. 1868, 1879, 1883, 20 L.Ed.2d 889 (1968)) (footnote omitted).

In this case, the police officers possessed a reasonable belief based on specific articulable facts that their safety was in danger. The stop occurred in a rural area late at night. The Defendant's vehicle had been driven erratically as if to evade the police. The occupants of the truck changed places as the police approached the vehicle. The Defendant, now in the passenger seat, made a furtive movement forward or down by bending at the waist. There was a large knife in plain view on the dashboard of the truck in easy reach of both occupants. The Defendant was wearing clothes identifying himself as a member of the "Kingsmen" motorcycle gang. The Defendant had a smaller knife in his possession, discovered after the pat down. The unlocked glove box was directly in front of where the Defendant had been seated, before he left the vehicle.

After the gun was discovered, the troopers advised the Defendant and Mrs. Becker that they were under arrest. Prior to the discovery of the gun, the troopers did not intend to take the Defendant or his wife into custody. They would have issued them traffic tickets for various vehicle and traffic infractions and allowed them to leave the scene (J44, 47, 50; F67–68).

The officers therefore had an interest in searching the immediate interior of the pickup truck to locate any weapons that the Defendant could possibly gain access to, either while he was in custody of the police or after he was released and permitted to re-enter the vehicle. The troopers acted reasonably in taking preventive measures to insure there were no other weapons within the Defendant's grasp before permitting him to re-enter the truck. Furthermore, the search

of the vehicle was restricted to those areas in which the suspect would generally have immediate control and could contain a weapon.

This analysis is supported by the numerous Second Circuit cases after *Michigan v. Long,* which have upheld a limited protective search of the interior of an automobile conducted for the personal safety of law enforcement officers. *See, e.g., U.S. v. Hernandez,* 941 F.2d 133 (2d Cir.1991); *U.S. v. Paulino,* 850 F.2d 93 (2d Cir.1988), *cert. denied,* 490 U.S. 1052, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989); *U.S. v. To Ray Tan,* 701 F.Supp. 45 (E.D.N.Y.1988).

Accordingly, the gun should not be suppressed.

B. *The Statement At The Station House*

Because the search of the Defendant's vehicle was justified as a search conducted for the protection and safety of the police officers, the subsequent statement of the Defendant at the station house is not the fruit of a poisonous tree. Accordingly, the statement should not be suppressed.

## CONCLUSION

For the foregoing reasons, the Defendant's motion should be denied.

**SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.

**SO ORDERED.**

**DATED: Buffalo, New York**

**April 19, 1993**