**Darryl J. WOODS, Plaintiff,**

v.

**Joseph CANDELA, Defendant.**

No. 93 Civ. 3051 (GLG).

United States District Court,
S.D. New York.

June 25, 1993.

Robert N. Isseks, Goshen, NY, for plaintiff.

Robert Abrams, Atty. Gen. of State of NY (by Frederick Lieberman), for defendant.

### *OPINION*

GOETTEL, District Judge.

I. STATEMENT OF FACTS

This is a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Joseph Candela

moves to dismiss this action, brought under 42 U.S.C. § 1983 by Plaintiff Darryl J. Woods on the grounds that Plaintiff's claims are untimely and barred by the statute of limitations.

For the purposes of a motion to dismiss, the facts are assumed to be as set forth in the complaint.

On September 25, 1989, Defendant, who is a New York state trooper, stopped Plaintiff's vehicle because it matched a general description of a vehicle that had been spotted at the scene of several recent robberies. Defendant asked Plaintiff if there were any weapons in the car and Plaintiff replied that he had a nightstick under the driver's seat. Defendant testified during the subsequent criminal trial that he asked if there were any other weapons in the car and Plaintiff replied that there were none and offered to allow Defendant to search the entire vehicle.

Defendant testified that Plaintiff agreed to allow him to search the trunk and opened the trunk for him.

Defendant then looked again at the rear seat area, where he observed an air rifle, a green cap and a black piece of cloth with two holes. Defendant testified the Plaintiff claimed ownership of the rifle. These articles matched a description of articles used by a perpetrator of recent armed robberies in the area.

Defendant advised Plaintiff that he was under arrest for criminal possession of the nightstick. Plaintiff denied his involvement in any robberies. At the police station, Plaintiff signed a form consenting to the previous search of his vehicle and to an additional search of the vehicle at the police station. Plaintiff was issued summonses for driving without a license and for having excessively tinted windows in his vehicle.

The evidence seized by Defendant was presented at a Grand Jury hearing in September or October of 1989 in which the Grand Jury charged Plaintiff with the crimes of robbery in the first degree and criminal possession of a weapon in the fourth degree.

After Plaintiff's arraignment, Plaintiff sought to suppress the evidence found in Plaintiff's vehicle as well as Plaintiff's statements to the police. The County Court denied these motions.

Plaintiff was tried by a jury. During the trial, the evidence seized from Plaintiff's vehicle by Defendant as well as Plaintiff's statements to the police were received in evidence. Plaintiff was found guilty and sentenced on November 15, 1990 to 12½ to 25 years imprisonment.

Plaintiff appealed and on January 19, 1993, the Appellate Division, Second Department reversed, dismissing the indictment against Plaintiff. 592 N.Y.S.2d 748. In its decision, the Appellate Division found that Plaintiff's motion to suppress the evidence found in his vehicle should have been granted. Although the stop was justifiable, the Appellate Division found that the circumstances did not provide Defendant with reasonable suspicion to detain and question Plaintiff and, therefore, Defendant's inquiry as to whether Plaintiff had any weapons in the vehicle was impermissible. Furthermore, they held that the items recovered during the search should have been suppressed, since a stop for a traffic offense will not justify a search of the motorist or of the vehicle unless there are reasonable grounds for believing the motorist guilty of a crime or if the officer has a reasonable, articulable basis to fear for his own safety. The Appellate Division found that Defendant had no such reasonable suspicion nor did he express any basis to fear for his safety.

Plaintiff was incarcerated for a period of two years and nine months.

On May 6, 1993, Plaintiff brought claims in federal court under § 1983 for violations of his rights under the Fourth, Fifth and Fourteenth Amendments for false arrest and malicious prosecution. Upon Defendant's motion to dismiss, Plaintiff has dropped all claims except for violations of his rights under the Fourth and Fifth Amendments.

## II. DISCUSSION

Defendant contends that Plaintiff's claims are barred by the governing statute of limitations. The statute of limitations applicable to civil rights claims under 42 U.S.C. § 1983 is that provided by the forum state for general

or residual personal injury claims. *Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989). New York Civil Practice Law and Rules states that such claims are subject to a three year statute of limitations. New York Civil Practice Law and Rules § 214(5).

In order to decide whether the statute of limitations has run prior to the commencement of an action, the court must determine when the cause of action accrued and whether the running of the statute was subject to any toll.

### A. *Accrual of the Claim*

■ Accrual with respect to claims brought pursuant to § 1983 is a matter of federal law. *Morse v. University of Vermont,* 973 F.2d 122, 125 (2d Cir.1992). The general rule in the Second Circuit is that a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of his action. *Singleton v. City of New York,* 632 F.2d 185, 192 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). Defendant contends that the claim accrued on September 25, 1989. He notes that all his actions with respect to the alleged unreasonable search and seizure, the alleged arrest without probable cause, and the alleged denial of Plaintiff's right to remain silent occurred on that day. According to Defendant, Plaintiff's continuing incarceration does not imply a continuing tort. "The continuing violation doctrine may not be based on the continuing effects of earlier unlawful conduct." *Day v. Moscow,* 769 F.Supp. 472 (S.D.N.Y.1991). See also, *Delaware State College v. Ricks,* 449 U.S. 250, 257–58, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980). Plaintiff alleges no continuing unlawful acts, only continual ill effects from the original Fourth and Fifth Amendment violations which occurred on September 25, 1989.

The Second Circuit dealt with a similar situation in *Mack v. Varelas,* 835 F.2d 995 (2nd Cir.1987). In that case, Plaintiff Mack was not allowed to produce an incarcerated witness for his defense, allegedly in violation of his Sixth Amendment rights. Mack's motion for a continuance was denied and Mack was convicted of first and second degree robbery. Mack's appeal was pending when he filed his § 1983 claim. His claim was deemed to have accrued on the date he was incarcerated allegedly in violation of his rights. Applying this reasoning to the current case, Plaintiff's action accrued on the date when his Fourth and Fifth Amendment rights were allegedly violated, September 25, 1989, the date of his arrest. If this action accrued on September 25, 1989, the three year statute of limitations would have run and Plaintiff's claims would be untimely and therefore barred.

A case more favorable to Plaintiff is *Triplett v. Azordegan,* 478 F.Supp. 872 (N.D.Iowa 1977). In that case, Plaintiff Triplett had been convicted for murder in 1954 and served 17 years in jail before a judicial determination that Plaintiff was drugged when he made the confession upon which the conviction had been based—an issue raised both at trial and in post-trial motions. Upon his release in 1972, Plaintiff brought a § 1983 suit which the defendants sought to dismiss as time-barred. In that case, as in this one, the movant claimed that plaintiff knew all the operative facts at the time of the original incident and should have sued then. *Id.* at 874. The *Triplett* court, however, rejected that reasoning, noting that:

> in a § 1983 action it is necessary to first define the constitutional wrong on which the claim is based. Here the Plymouth County District Court did just that in October of 1972.

*Id.* at 875.

Despite the *Triplett* court's reasoning, the Second Circuit's analysis of the accrual of the claim in *Mack,* forecloses the similar argument in this case that the claim accrued on the date of the Appellate Division's reversal.

### B. *Preclusion of Plaintiff's § 1983 Claim Due to the First Criminal Conviction and its Effect on the Running of the Statute of Limitations*

At the initial criminal trial, when the county court denied Plaintiff's motion to suppress the evidence from the search at trial as a violation of his Fourth and Fifth Amendment

Rights, Plaintiff no longer had any legal ground on which to bring his § 1983 claim based on the alleged Fourth and Fifth Amendment violations. "There is no question that state court judgments can have collateral estoppel effect in subsequent section 1983 proceedings." *Anderson v. City of New York,* 611 F.Supp. 481, 486 (S.D.N.Y. 1985) (citing *Migra v. Warren City School District Board,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). *See also, Liner v. Ward,* 754 F.Supp. 32 (S.D.N.Y.1991). "The standard for determining· if litigation of a question in a civil suit is barred by a prior criminal trial is whether the question was 'distinctly put in issue and directly determined' in the criminal prosecution." *Kauffman v. Moss,* 420 F.2d 1270, 1274 ·(3d Cir. 1970); *See also, McNally v. Pulitzer Publishing Co.,* 532 F.2d 69, 76 (8th Cir.1976). "In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment" *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534; *Kauffman,* 420 F.2d at 1274. In the present case, Plaintiff raised the issue that the police action was improper in a motion to ·suppress. The motion was denied. The seized evidence must be considered essential to the verdict as it was the basis for the entire case against Plaintiff. A § 1983 claim based on the issue of suppression of the disputed evidence would have been governed by claim preclusion and, for all practical purposes, foreclosed by Plaintiff's criminal conviction pending the outcome of the appeal.

While the Second Circuit held in *Mack v. Varelas* that Plaintiff needed to bring his § 1983 claim within the statute of limitations period accruing from the original constitutional violation, they noted that final disposition of the claim would have to wait until the conclusion of state court proceedings. "Our determination that the adjudication should not proceed until the state court criminal proceedings have been concluded is based on the prudential consideration that those pro-

ceedings may suffice to establish that Mack's incarceration does not constitute injury." *Mack,* 835 F.2d at 999. They concluded that "the action should be stayed, rather than dismissed, pending termination of the state court criminal proceedings against Mack." *Id.* at 1000.[1] This was true even though the issue on appeal in *Mack* was not identical to the issue underlying the § 1983 claim. The *Mack* court commented: "Nor would an affirmance of Mack's conviction necessarily negate the basis for his claim for damages, for . . . it is likely that the state appellate court will not reach the question of the propriety of the action or inaction by the sheriffs." *Id.* at 998.

In the present case, the issues on appeal in the Appellate Division were identical to the issues which underlie Plaintiff's § 1983 claim. The resolution of the criminal proceedings would certainly provide an answer as to whether or not Plaintiff's Fourth and/or Fifth ·Amendment rights had been violated. If the county court's determination of the propriety of the police action were allowed to stand, Plaintiff's claim was precluded. Only if the Appellate Division determined that a constitutional violation had indeed taken place would Plaintiff's claim be legally viable.

The *Triplett* court, facing the same issue, noted that "It is almost too· evident to warrant comment that plaintiff, having been convicted of murder by virtue of a confession which in 1955 was deemed legal and admissible, could not have, at that time, pursued a § 1983 claim." *Triplett,* 478 F.Supp. at 875. That·court recognized that "[t]o hold that a plaintiff needed to ignore the criminal proceedings and immediately sue under § 1983 would mean that plaintiff would have had to pursue a technically possible, but at the time frivolous suit. To so argue is to read Kafka into law." *Id.*

In circumstances in which the state appellate proceedings will definitely decide the issue underlying a possible § 1983 suit, the policy outlined in *Mack* of requiring· the federal court to stay the pending § 1983 suit

---

1. This reasoning has been expressly followed by the Ninth Circuit in *Young v. Kenny,* 907 F.2d 874, 878 (9th Cir.1989).

does not apply with the same force. To require the criminal defendant to bring a civil § 1983 suit before a definitive determination of the issue in state court in order to meet statute of limitations requirements and then require the federal court to stay the action pending the outcome of the state criminal proceedings will lead to a lot of unnecessary filing of claims. Alert criminal defense lawyers will file § 1983 claims as a matter of course, to preserve future § 1983 actions on the chance that the appeals process eventually lasts longer than the pertinent statute of limitations period. Many of these claims may eventually prove groundless where a conviction is upheld on appeal. Following *Mack*, federal courts would not be able to dispose of these claims until the end of all criminal proceedings in state court and many stayed, groundless § 1983 claims would ferment in federal court awaiting state appellate outcomes.[2]

Although the persuasive reasoning of the *Triplett* court would avoid these problems, decisions of the Second Circuit and the weight of case law from other circuits require us to decide differently.[3]

### C. Tolling of the Statute of Limitations

If, in similar situations, the statute of limitations tolled during plaintiff's incarceration, plaintiffs would be able to maintain potentially valid § 1983 claims without forcing criminal defendants and federal courts to go through the elaborate dance described above in order to keep them alive. Tolling of the statute of limitations can occur as a result of the federal court tolling the limitations period or as a result of a state provision for tolling the limitations period.

#### 1. Power of Federal Courts to toll state statutes of limitations

Federal courts do have the power to toll statutes of limitations borrowed from state law, but only where application of the statute of limitations would frustrate the policy underlying the federal cause of action. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975); *Jewell v. County of Nassau,* 917 F.2d 738, 740 (2d Cir.1990). The Supreme Court has identified the principal policies embodied in § 1983 as deterrence, compensation and uniformity. *Board of Regents v. Tomanio,* 446 U.S. 478, 488–89, 100 S.Ct. 1790, 1797–98, 64 L.Ed.2d 440 (1980). In the present case, neither deterrence nor compensation is "significantly affected by this rule of limitations since plaintiffs can still readily enforce their claims, thereby recovering compensation and fostering deterrence, simply by commencing their actions within three years." *Id.* at 488, 100 S.Ct. at 1797. Furthermore, the need for uniformity has not been held to warrant the displacement of state statutes of limitations for civil rights actions. *Id.* at 489, 100 S.Ct. at 1797. As a result, this court does not have the power to toll the statute of limitations in order to allow Plaintiff's § 1983 claim.

#### 2. Pendent state proceedings not recognized as a reason to toll the statute of limitations

The *exclusive* method to maintain a federal claim that may be affected by pending New

---

**2.** As a solution to this problem, we suggest tolling the statute of limitations for § 1983 claims from the date of a criminal conviction to the date of completion of appellate proceedings if the criminal defendant's § 1983 claim would be collaterally estopped by the original state court conviction. Of course, if the issue in the state appellate court is not one that would, if successful, allow the criminal defendant to pursue an otherwise collaterally estopped § 1983 claim, then the current discussion would not be applicable and no reason would exist to toll the statute of limitations.

**3.** *See Strung v. Anderson,* 452 F.2d 632 (9th Cir. 1971) which rejected the appellants' argument that their § 1983 action did not accrue until the validity of the contested search and seizure had been adjudicated in the state court criminal proceeding because the § 1983 claim is unaffected by the availability of remedies in a state court to test a constitutional right. *Id.* at 633. *See also, Emory v. Logan,* 801 F.Supp. 899 (D.Mass.1992) which assumed, without deciding, that even if "plaintiff's criminal conviction would have precluded him from challenging the unlawfulness of the arrest in a subsequent civil rights action, the fact of such estoppel does not operate to toll the statute of limitations for the § 1983 action." *Id.* at 902.

York State proceedings is to file within the limitations period whereupon the federal court will be required to stay it. "Where a plaintiff wishes or is required to pursue his claims in succession, rather than concurrently, in the absence of the parties' agreement made to waive the limitary period before it had expired, a judicial stay of the pending suit, rather than dismissal, albeit expressed to be without prejudice, is the only means by which the bar of limitations may be avoided." *Tomanio*, 446 U.S. at 486–87, 100 S.Ct. at 1796; *Jewell*, 917 F.2d at 740–41.

In *Tomanio*, the Court went on to note that:

> [T]here is no question that respondent's § 1983 action was "separate and independent" from the state judicial remedy pursued in state court. This Court has not interpreted § 1983 to require a litigant to pursue state judicial remedies prior to commencing an action under this section.... Thus the very independence of § 1983 reveals that the New York rule precluding tolling in the circumstances of this case is not "inconsistent" with the provisions of § 1983. (footnote omitted)

*Tomanio*, 446 U.S. at 491, 100 S.Ct. at 1798–99. The Court treats a claim under § 1983 as an independent federal remedy and any state policy of repose which does not allow a plaintiff to litigate such alternative claims in succession, without risk of a time bar, is not "inconsistent". *Id.* at 489, 100 S.Ct. at 1797.

3. *New York state provisions for tolling the statute of limitations*

■ If New York law provides for tolling in this circumstance, then such a toll would be recognized by the federal court which recognizes not only the state limitations period, but also any state provisions for tolling of the limitations period. *See, e.g., Railway Express*, 421 U.S. at 463–64, 95 S.Ct. at 1721–22.

■ In *Roldan v. Allstate Insurance Co.*, 149 A.D.2d 20, 544 N.Y.S.2d 359 (2d Dep't 1989), the plaintiff sued the defendant insurance company to pay for a default judgment that was entered against plaintiff in a 1979 tort claim. The defendant contended the suit was time-barred because it was filed in 1986 more than a year past the governing statute of limitations. However, in that case, the original judgment that was the basis of the suit had been vacated in 1982 and then reinstated in 1986. The court in *Roldan* held that under the facts of the case:

> the running of the Statute of Limitations with respect to the plaintiff's cause of action ... was suspended as soon as the Supreme Court, by erroneously granting Allstate's motion to vacate the judgment in the underlying action, in effect extinguished the plaintiff's causes of action at Allstate's behest. The running of the Statute of Limitations remained suspended until this court, in February 1986, reversed the order vacating the judgment in the underlying action, thereby reviving the plaintiff's causes of action. Because of this toll, we conclude that the plaintiff's causes of action ... are not time-barred.

*Roldan*, 544 N.Y.S.2d at 368. Similarly, in the present case, the county court's holding in 1990 that the police conduct was proper effectively extinguished Plaintiff's § 1983 claim based on damages suffered as a result of the improper police conduct. The *Roldan* court emphasized, however, that the earlier judgment had been vacated on the defendant's motion and that the defendant "must bear the responsibility exclusively for the order which deprived the plaintiff of her ability to assert her assigned's case."

Furthermore, the Fourth Department has clearly stated that a "subsequent court decision which affects a party's legal rights does not revive a cause of action which is not timely instituted, or extend the time within which to bring the action or proceeding." *Williamson v. Fermoile*, 31 A.D.2d 438, 298 N.Y.S.2d 557, 560 (4th Dep't 1969).

The current backlog in the New York Appellate Divisions, most notably in the Second Department, exacerbates this problem as it occurs in New York. Many state appellate decisions, like the one in the present case, are not rendered until the statute of limitations period for § 1983 actions has expired.

Nonetheless, the reasoning of the Third Circuit in *Sandutch v. Muroski*, 684 F.2d 252 (3d Cir.1982), is compatible with the reason-

ing employed by this circuit. In that case, the plaintiff was wrongly convicted on the basis of fraudulent testimony secured via a conspiracy by public officials. His conviction was reversed approximately three years later, whereupon he brought a civil rights claim under 28 U.S.C. § 1291.

The court held that the statute of limitations began running from the point at which plaintiff had reason to know of the alleged conspiracy to secure false testimony. Applied to the present case, Plaintiff's cause of action accrued on the date he had reason to know he was subject to the improper police conduct, September 25, 1989, the date of his arrest.

The *Sandutch* court also held, contrary to the holding in *Triplett,* 478 F.Supp. at 875–76, that continuing incarceration is not a continuing tort because the plaintiff did not allege any unlawful acts within the limitations period, only continued ill effects from the initial violation of his rights. *Sandutch,* 684 F.2d at 254. This is identical to the present case where the only alleged unlawful conduct occurred before the conviction.

Lastly, the *Sandutch* court held that the limitations period had not been tolled by Sandutch's incarceration. *Id.* Although this is a question of Pennsylvania law and therefore not instructive in the present case, New York law leads us to the same result. New York Civil Rights Law § 79 states that "A sentence of imprisonment in a state correctional institution for any term less than for life … shall not be deemed to suspend the right or capacity of any person so sentenced to commence and prosecute an action or proceeding in any court…."[4]

The weight of case law, including the Second Circuit's decision in *Mack,* leads us to only one conclusion: Plaintiff's § 1983 claims for false arrest and malicious prosecution accrued at his arrest on September 25, 1989 when the evidence was improperly seized and the statute of limitations did not toll.

4. Until 1973, imprisonment was a disability which would toll the statute of limitations under NY CRL § 79 and under New York Civil Practice

## III. CONCLUSION

The statute of limitations governing claims pursuant to 42 U.S.C. § 1983 in New York is three years. Because the claim accrued on September 25, 1989 but was not filed until May 1993, and no federal or New York State provision for tolling the statute of limitations pertaining to § 1983 claims applies to the circumstances of this case, Plaintiff's claim for relief is time-barred and defendant's motion to dismiss under Rule 12(b)(6) is granted in its entirety. The Clerk shall enter judgment for the Defendant.

SO ORDERED.

Law and Rules § 208, but the state legislature specifically amended both rules to erase that provision.