Darryl J. WOODS, Plaintiff,

v.

Joseph CANDELA, Defendant.

No. 93 Civ. 3051 (CLB).

United States District Court,
S.D. New York.

April 9, 1996.

Robert W. Isseks, Middletown, NY, for plaintiff.

Gary Lesch, New York State Atty. General's Office, New York City, for defendant.

*MEMORANDUM & ORDER*

BRIEANT, District Judge.

Plaintiff Darryl Woods commenced this action on May 6, 1993. Plaintiff claims that Trooper Candela's conduct caused his unjust and unlawful conviction and incarceration, and deprived him of his rights not to be subjected to unreasonable searches and seizures, not to be arrested without probable cause, to remain silent, not to be deprived of liberty without due process of law, to the equal protection of the laws, and substantive due process. On June 25, 1993, the district court (Goettel, J.) granted defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that plaintiff's claims were barred by the applicable three year statute of limitations and did

not fall within any applicable tolling rules. *Woods v. Candela*, 825 F.Supp. 43 (S.D.N.Y. 1993).

The Court of Appeals for the Second Circuit affirmed. 13 F.3d 574 (2d Cir.1994). Mr. Woods then filed a petition for certiorari to the United States Supreme Court. In October 1994, the Supreme Court of the United States granted Woods' petition, vacated the decision of the Court of Appeals and remanded the matter for further consideration in light of the Court's decision in *Heck v. Humphrey*, —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). See *Woods v. Candela*, —— U.S. ——, 115 S.Ct. 44, 130 L.Ed.2d 5 (1994).

Our Court of Appeals thereafter held that the plaintiff's action was timely, and remanded the matter for further proceedings. 47 F.3d 545 (2d Cir.1995). Candela then filed a petition to the Supreme Court for certiorari which was denied, —— U.S. ——, 116 S.Ct. 54, 133 L.Ed.2d 18 (1995), and the matter is now before this Court for further proceedings.

This action arises out of an incident that occurred in the late afternoon of September 25, 1989. The following facts were recited in the decision of the New York Supreme Court, Appellate Division, Second Judicial Department, 189 A.D.2d 838, 592 N.Y.S.2d 748 (2nd Dep't.1993) and have been adopted by the plaintiff. At approximately 5:34 p.m. on that day, plaintiff was driving his automobile, a blue 1978 Toyota with heavily tinted windows, in Newburgh, New York. New York State Trooper Candela, defendant here, observed the plaintiff's car pass his patrol car as it traveled in the opposite direction. Trooper Candela was aware that a small blue vehicle with tinted windows had been seen several days earlier in the vicinity of two hotel robberies and also in the parking lot of a hotel when a larceny was discovered. Because of this information Trooper Candela made a U-turn and was directly behind the Toyota when it stopped behind a discharging school bus.

Plaintiff Woods, the driver of the vehicle, exited and approached Candela's car while his passenger remained seated. Woods asked Candela if Candela was going to pull him over. Candela in turn asked Woods why he would ask such a question. Woods replied that the state police had pulled him over earlier, perhaps because of his tinted windows or "[m]aybe they think I'm a drug dealer." Woods identified himself and told Candela that he was a security guard. Candela then instructed Woods to find a place to pull over by the side of the road, out of traffic.

Once out of the roadway, Candela approached the driver's side of Wood's vehicle. Candela asked Woods for his driver's license, registration, and insurance information for his vehicle. Woods produced the registration and a non-driver's I.D. card. Trooper Candela then asked Mr. Woods if he had access to any weapons. Woods then produced a nightstick from under the driver's seat. When asked if he had a certificate for the nightstick, Woods replied that he did but that he did not have it with him. Trooper Candela then asked Woods if he had any other weapons in the car. Woods responded that he did not and offered to allow him to search the car. Trooper Candela than patted down Mr. Woods and searched the driver's side and rear seat areas of the car. No contraband or weapons were found. Trooper Candela testified at a suppression hearing that the defendant then agreed to allow him to search the trunk and opened the trunk compartment for him. Trooper Candela found an army field jacket in the trunk and searched its pockets. He also observed a luggage case and asked the defendant what was inside of it. When the defendant replied that it was just clothing, Trooper Candela asked for permission to look inside. Although the defendant said the luggage would be hard to reach, he consented and crawled into the back seat in order to retrieve it. When the defendant handed him the luggage, Trooper Candela found that it was unzipped and contained only a flashlight, a T-shirt, and some wire. Trooper Candela testified that he then frisked the passenger and searched the front passenger area and the glove compartment before again looking into the rear seat area. On the seat were an air rifle, a green cap, and a black cloth with two holes in it that had not been there earlier.

In response to his questions, the defendant said that the air rifle was his and that he used it for dog training and target shooting. Trooper Candela told the defendant to get back in the car and called the police station to ask for backup and to inform them that he had an armed robbery suspect.

Trooper Candela testified he was aware that there had been six hotel robberies in recent weeks in the area. The perpetrator had been described as wearing an army jacket and a black face mask and carried a sawed-off rifle or shotgun. After calling for backup, Trooper Candela said he advised the defendant that he was under arrest for criminal possession of a weapon in the fourth degree (the nightstick). The defendant was searched and placed in handcuffs. Trooper Candela advised the defendant of his Miranda rights in the patrol car, and Mr. Woods denied involvement in any robberies. At the police station, the defendant signed a form consenting to the search of his vehicle on the highway and to an additional search of the vehicle at the police station. After his arrest, the defendant was interviewed by an investigator and gave a statement. He was issued summonses for driving without a license and for having excessively tinted windows in his vehicle. The State court refused to suppress the physical evidence found in the Toyota and the defendant's statements to the police. That court determined that the defendant was not in custody until he was placed under arrest, and that he consented to the search of his vehicle. Once the mask, army clothing, and air rifle were discovered, Trooper Candela had probable cause to arrest the defendant. The court determined that the defendant voluntarily waived his Miranda rights. After a trial, the defendant was convicted of robbery in the first degree in connection with the robbery of a restaurant and criminal possession of a weapon in the fourth degree (the nightstick).

The Appellate Division, Second Department, reversed, *People v. Woods,* 189 A.D.2d 838, 592 N.Y.S.2d 748 (1993) holding that while the excessively tinted windows justified the traffic stop, the scope of the search and questioning by Trooper Candela to matters unrelated to traffic violation were unreasonable and that the fact that Woods worked as a security guard did not justify search for weapons and further that Woods oral consent to search of vehicle is not shown to have been voluntary.

Trooper Candela now moves for summary judgment in his favor pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that there is no genuine issue of material fact and he is entitled to judgment as a matter of law. In the alternative, he claims is entitled to qualified immunity. The plaintiff opposes Trooper Candela's motion primarily on the ground that Candela is estopped from relitigating the issues already determined by the state appellate court.

■ The doctrine of collateral estoppel may only be applied if the following elements are established: (1) the party against whom collateral estoppel is asserted must have been a party, or in privity with a party, to the prior action; (2) there must have been a final determination of the merits of the issues sought to be collaterally estopped; (3) the issues sought to be precluded must have been necessary, material, and essential to the prior outcome; (4) the issues sought to be precluded must have been actually litigated in the prior action, with the party against whom estoppel is asserted having had a full and fair opportunity to litigate the issues; and (5) the issues actually and necessarily decided in prior litigation must be identical to the issues sought to be estopped. *GAF Corp., v. Eastman Kodak Co.,* 519 F.Supp. 1203, 1211 (S.D.N.Y.1981).

■ The Fourth and Fifth Amendment of the United States Constitution set only the minimum that is required. States are free to enact or to create by judicial fiat provisions additional privileges and immunities going beyond requirements found in the United States Constitution. New York State through its courts, has chosen to expand upon the constitutional protections in several areas, one of which is a person's right to be free from unreasonable search and seizures. See, *People v. Hollman,* 79 N.Y.2d 181, 581 N.Y.S.2d 619, 590 N.E.2d 204. The decision of the Appellate Division in Wood's underlying criminal trial is an example of New York State's stricter requirements in the context

of the legality and scope of searches and seizures in criminal cases. The Appellate Division overturned the finding of the defendant's guilt based upon Mr. Wood's rights under Constitution and the laws of New York State. Insofar as concerns federal law the search and arrest were valid.

■ In this action, Mr. Woods raises a claim that his *federal* constitutional rights were violated. Because of the heightened standards required in New York prior to effectuating a valid traffic stop, search and arrest, the issues actually and necessarily decided in the prior litigation are not identical to the issues sought to be estopped in this action. As such, collateral estoppel is inappropriate on these facts. Our Court of Appeals has held that "Whether a search and seizure is constitutional under the circumstances of a particular case, however, is determined by applying federal law". *United States v. Scopo*, 19 F.3d 777 (2d Cir.1994) *See also United States v. Pforzheimer*, 826 F.2d 200 (2d Cir.1987) (even when a state crime was investigated solely by state officers, a federal court must apply federal law to evaluate search and seizure issues.)

In *Scopo* the Colombo Family Strike Force, a task force comprised of FBI agents and New York City Police Detectives, had been trailing the defendant's vehicle in an attempt to crack down on a rash of shootings that had been occurring in connection with organized crime activity in New York City attributed to the Colombo family. The defendant's vehicle was stopped because he failed to signal while changing lanes as required by N.Y.Veh. & Traf.Law § 1163(d). After the stop the police officers noticed that the defendant threw something on the floor of the automobile. When they looked in the car they observed a handgun in plain view protruding from one of the map pockets located on the rear of the seats (the item that the police witnessed being thrown to the floor ultimately turned out to be a telephone). The defendant was placed under arrest. The district court found that (1) the stop of Scopo's car, under the pretext of a minor traffic violation, was not justified under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny because there was no reasonable suspicion that Scopo was engaging in a criminal activity, and (2) Scopo's arrest was merely a pretext for searching his car for weapons, as evidenced by (a) the testimony of Detective Higgins that the Colombo Family Strike Force often utilized the traffic laws to stop suspected members of organized crime to confiscate weapons, and (b) the fact that Scopo was not stopped until 2.2 miles after the alleged traffic violations.

Our Court of Appeals held that while the basic violation that the vehicle was stopped for was minor, the officers acted within their authority in stopping Scopo for violation of the state law. The Court of Appeals concluded that there was probable cause to stop and arrest Scopo as the officers had directly observed him violating the traffic laws by not signaling lane changes and that under New York law a person may be arrested for a traffic infraction offense. (N.Y.Veh. & Traf. Law § 155—"For purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense."); (N.Y.Crim.Proc.Law § 140.10(1)(a)—an officer may arrest a person for "[a]ny offense when [the officer] has reasonable cause to believe that such person has committed such offense in [the officer's] presence"); *People v. Cortes*, 86 Misc.2d 155, 382 N.Y.S.2d 445 (Sup.Ct.1976) (a police officer may arrest a person for a traffic violation committed in the officer's presence). Our Court of Appeals also concluded that once the police had probable cause to stop and arrest Scopo, they were entitled to search both him and his "grab space" in the car. *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2863, 69 L.Ed.2d 768 (1981) ("when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile").

■ This Court concludes that this case is controlled by the reasoning of our Court of Appeals in *Scopo*. Trooper Candela was authorized to stop Woods for excessively tinted windows, a violation of N.Y.Veh. & Traf.Law § 375 12–a[b]. As Trooper Candela witnessed the infraction, under New York law,

he was therefore authorized to arrest the plaintiff—see N.Y.Veh. & Traf.Law § 155, and N.Y.Crim.Proc.Law § 140.10(1)(a). Additionally, the testimony is that Mr. Woods did not produce evidence of a driver's license when requested to do so. This in and of itself would allow the police to make an arrest. Once authorized to make an arrest, Trooper Candela was entitled to search the grab area around Mr. Woods. It should make no difference that instead of searching the area himself, that he asked the plaintiff to do so.

This Court finds that as a matter of law Trooper Candela was entitled to make the stop and search of the grab area around Mr. Woods. That search turned up a nightstick for which the plaintiff was unable to produce a certificate allowing him to possess the instrument. Regardless of whether the plaintiff consented to the search of the entire car or not, the air gun and suspicious clothing would have been ultimately discovered during an inventory search of the vehicle once it was impounded. In any event, the air rifle and suspicious clothing were discovered by Trooper Woods in plain view on the back seat of the plaintiff's car. Under these circumstances, this court concludes as a matter of law that Trooper Woods acted with probable cause and thus the search and arrest of the plaintiff was entirely constitutional under federal law.

Because this Court concludes that the defendant acted with probable cause at all times and thus no unconstitutional search and seizure occurred, it need not reach the issue of the Trooper's qualified immunity. The Court notes however that on the present record, it is evident that it was objectively reasonable for the officer to believe that probable cause existed, and additionally that officers of reasonable competence would generally agree that the probable cause test was met. See *Robinson v. Via*, 821 F.2d 913 (2d Cir.1987).

The complaint in this action states claims for unreasonable searches and seizures, violation of the right not to be arrested without probable cause, violations of plaintiff's right to remain silent, plaintiff's rights not to be deprived of liberty without due process of law, to the equal protection of the laws, and substantive due process. While the motion papers and briefs address only the plaintiff's claims for unreasonable searches and seizures and not to be arrested without probable cause the issues surrounding those claims are the foundation of the plaintiff's remaining claims. With this Court's dismissal of the plaintiff's claims seeking damages resulting from an unreasonable searches and seizures plaintiff's other claims must fail as well. Those claims are based upon the presumed illegality of the underlying stop and search of the plaintiff's car and his subsequent arrest. As this Court has concluded that no constitutional violation occurred in the stop, search and arrest, plaintiff's remaining claims must fail and are dismissed as well.

While not critical to this Court's resolution of the matter, we express our appreciation to attorney Robert N. Isseks for calling our attention to the reversal by the New York Court of Appeals in 60 N.Y.2d 897 (1983) of the decision in *Brown v. City of New York*, 80 A.D.2d 596, 436 N.Y.S.2d 37 (2d Dept. 1981). The Appellate Division decision in *Brown* has been cited after November 23, 1983, inappropriately by federal courts as setting forth the law of collateral estoppel in New York insofar as concerns judgments of acquittal in prior criminal trials. See, e.g. *Gill v. Stella*, 845 F.Supp. 94, 100 (E.D.N.Y. 1994). There is no identity of parties present in this case; a requirement for collateral estoppel in New York.

The Clerk shall file a final judgment.

SO ORDERED.