**Marion HOLEMAN and Wallace Holeman, Administratrixes of the Estate of Darrel Holeman, Plaintiffs–Appellees,**

v.

**CITY OF NEW LONDON, New London Police Department, Gaspar Vincent Garcia, Bruce Rinehart, Greg Williams and John Doe, Defendants–Appellants,**

Office of Adult Probation, State of Ct Judicial Dept. and Dept. of Corrections, State of Ct, Movant.

Docket No. 04–5031–CV.

United States Court of Appeals, Second Circuit.

Argued: Aug. 22, 2005.

Decided: Sept. 30, 2005.

Daniel C. Demerchant, Howd & Ludorf, Hartford, CT (Thomas R. Gerarde and John J. Radshaw III on the brief), for defendants-appellants.

Richard Hustad Miller, Uncasville, CT, on submission, for plaintiffs-appellees.

Before: JACOBS, KATZMANN, HALL, Circuit Judges.

JACOBS, Circuit Judge.

Gaspar Vincent Garcia and Greg Williams are officers in the New London Police Department who participated in a traffic stop that ended in the death of passenger Darrel Holeman. They are sued under 42 U.S.C. § 1983 by the representatives of Holeman's estate for alleged violations of Holeman's Fourth Amendment rights, and take this appeal from an order of the United States District Court for the District of Connecticut (Squatrito, J.), denying in part their motion for summary judgment on the defense of qualified immunity. *See Holeman v. City of New London*, 330 F.Supp.2d 99 (D.Conn.2004). We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1291 to the extent that the district court denied qualified immunity as a matter of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

The narrative of events unfolded in four stages that are useful for organizing the questions presented on appellate jurisdiction and the merits: (1) Officer Williams'

initial investigative stop of the car; (2) Officer Garcia's attempted pat-down of Holeman; (3) Officer Garcia's use of deadly force; and (4) Officers Williams and Garcia's post-shooting use of force. As to the traffic stop, the district court ruled that a factfinder could find that Officer Williams lacked probable cause or a reasonable suspicion to justify the stop, and that his belief that he had such a justification was unreasonable. The district court similarly ruled that genuine disputes of material facts prevent a resolution by summary judgment as to the remaining three stages.

We reverse in part, and hold that defendants-appellants enjoy qualified immunity as to their conduct during the traffic stop and the attempted pat-down. However, as to the use of deadly force and the post-shooting use of force, we lack appellate jurisdiction to review the ruling that summary judgment is barred by genuine disputes over concededly material facts, and therefore dismiss that part of this appeal. *See Escalera v. Lunn,* 361 F.3d 737, 742–43 (2d Cir.2004).

## I

Except as indicated, the facts recited are uncontested.

Pre-dawn on August 22, 1999, Officer Williams was investigating a "prowler call" in New London and followed a car with tinted windows that took a circuitous route through a troubled neighborhood. He decided to stop the car on suspicion of criminal activity and on the chance that the driver was lost.

As Officer Williams spoke with the driver, he was joined by Officer Garcia (who was also investigating the prowler call). When Officer Garcia checked out the names of the driver and passenger, he learned that passenger Darrel Holeman was on parole for a narcotics felony. The driver gave Officer Williams consent to search the car; plaintiffs-appellees contest, however, whether the driver acquiesced in a full search of the interior. Williams asked Holeman to step out so that the search could be done. Holeman had to be asked repeatedly to get out.

When Holeman emerged, Officer Garcia attempted a pat-down search. Officers Garcia and Williams testified that Holeman was uncooperative and aggressive; the driver of the car corroborates that account; plaintiffs-appellees contest it. It is uncontested, however, that Holeman said, "I'll show you what I got in my pocket" and moved his hands towards his pocket, and that Officer Garcia asked Officer Williams to assist in restraining Holeman.

A struggle ensued, during which—according to Officer Garcia—Holeman drew a small silver handgun and pointed it at Officer Williams' head. Officer Garcia felled Holeman with three shots. Officers Garcia and Williams testified that they could not see Holeman's hands to tell whether he was still armed, and that Holeman did not respond to their commands that he show his hands. Officer Williams hit Holeman several times in the head and commanded his police dog to "engage" Holeman, which Nero did. Officers Williams and Garcia testified that Holeman then showed his empty hands, and was handcuffed.

An ambulance arrived minutes later. While tending to Holeman, the paramedics found a small silver handgun near him. Plaintiffs–Appellees contend that the handgun was planted by the police. The paramedics testified that Holeman was uncooperative and combative and that, handcuffed as he was, he had to be strapped to a board to restrain him from injuring himself or others. (Plaintiffs–Appellees do not

dispute that Holeman was combative when the paramedics arrived at the scene.) Darrel Holeman died at the hospital shortly after.

## II

■ We review *de novo* the district court's denial of summary judgment on the ground of qualified immunity. *Savino v. City of New York,* 331 F.3d 63, 71 (2d Cir.2003). Our review at this juncture is limited, however, to "circumstances where the qualified immunity defense may be established as a matter of law." *Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992). For factual matters, we review "whether a given factual dispute is 'material' for summary judgment purposes, ... but we may not review whether a dispute of fact identified by the district court is 'genuine.'" *Escalera,* 361 F.3d at 743 (internal citation omitted). So even when a district court appears to have erred in finding that there is sufficient evidence to create a triable issue of fact, we may only review the district court's ruling that the issue is material to the outcome. At this stage in the proceedings, we cannot review a determination that a material issue of fact is genuinely in dispute.

## III

■ Qualified immunity "shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). Qualified immunity is thus a shield from *suit,* not simply liability. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

■ As the Supreme Court explained in *Saucier v. Katz,* the inquiry into whether a suit against officers should go forward is a two-step process: (1) the court must determine whether the facts, taken in the light most favorable to the party asserting an injury, show a violation of a constitutional right; and (2) the court must determine whether the constitutional right was "clearly established" such that "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." 533 U.S. at 201-06, 121 S.Ct. 2151 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *see also Cowan v. Breen,* 352 F.3d 756, 761 (2d Cir.2003); *Stephenson v. Doe,* 332 F.3d 68, 80 n. 15 (2d Cir.2003). Thus "defendants are entitled to summary judgment unless, in response to defendants' motion for summary judgment, [plaintiffs have] submitted evidence sufficient to establish that objectively reasonable persons in the defendants' position would have known that their conduct violated [plaintiffs'] rights." *Savino,* 331 F.3d at 71; *see also Saucier,* 533 U.S. at 206, 121 S.Ct. 2151 (explaining that qualified immunity protects officers from the Fourth Amendment's sometimes "hazy borders"); *Mandell v. County of Suffolk,* 316 F.3d 368, 385 (2d Cir.2003).

### A. The Traffic Stop

■■ The temporary detention of an individual during a traffic stop is subject to limitation under the Fourth Amendment as a "seizure" of the person. *Whren v. United States,* 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The Fourth Amendment requires that an officer making such a stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity. *Id.* at 810, 116 S.Ct. 1769; *United States v. Arvizu,*

534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Whether probable cause or reasonable suspicion exists is an objective inquiry; the "actual motivations of the individual officers involved" in the stop "play no role" in the analysis. *Whren*, 517 U.S. at 813, 116 S.Ct. 1769.

■ In deciding that the traffic stop was unconstitutional under the Fourth Amendment and that it was objectively unreasonable, the district court considered five circumstances cited by the police: (1) the car hesitated and stopped at a stop sign; (2) after turning at the stop sign, the car followed a route it had already traveled when Officer Williams first spotted it; (3) the car was in New London, but was registered in Groton; (4) it was approximately 4:30 am; and (5) the car was in a high crime neighborhood. *Holeman*, 330 F.Supp.2d at 112. The circular driving in the dead of night in a high-crime area is suggestive, and the totality of circumstances for this purpose may be greater than their sum; but if these five circumstances were all, we might agree that they do not amount to a reasonable suspicion: stopping at a stop sign is not sinister; Groton and New London are nearby; and in the dead of night in a high crime neighborhood, it would be more suspicious to be on foot than in a car.

There were, however, at least three other uncontested facts that the district court did not consider: (6) at the time Officer Williams observed the car, he was investigating a prowler call in the area; (7) the car was the only vehicle he saw on the road; and (8) the car had tinted windows, which obstructed Officer Williams' view into the car and may provide independent grounds to support the stop.

■ We conclude that the district court erred in failing to consider these additional facts, each of which are clearly material to whether the traffic stop violated the Fourth Amendment and whether Officer Williams' conduct was objectively unreasonable under clearly established federal law. In *Illinois v. Wardlow*, for example, the Supreme Court held that the police had a reasonable suspicion to stop a person in a high crime area who demonstrated nervous and evasive behavior, and who attempted to run away upon seeing the police. 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). An "individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime[, b]ut officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Id.* at 124, 120 S.Ct. 673. Similarly, courts have held that driving with deeply tinted windows is itself a traffic violation that furnishes probable cause or reasonable suspicion. *See, e.g., United States v. Harrell*, 268 F.3d 141, 148–49 (2d Cir.2001); *Woods v. Candela*, 921 F.Supp. 1140, 1144–45 (S.D.N.Y.1996).[1]

■ There is no dispute, genuine or otherwise, as to these additional facts. The district court's error was to overlook their materiality—an error of law. We therefore have jurisdiction to consider the legal issue presented: whether, in light of all of the facts, Officer Williams' stop is protected by qualified immunity. As a

---

1. It does not matter whether the stop was on account of the traffic violation, because reasonableness is evaluated from an objective standard. *United States v. Dhinsa*, 171 F.3d 721, 725 (2d Cir.1998) ("an observed traffic violation legitimates a stop even if the detectives do not rely on the traffic violation"); *see also Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

matter of law, the answer is yes. Officer Williams was looking for a reported prowler when he saw the only car on the road driving around the neighborhood randomly or in a circuit. Moreover, he could not see into the car because of the window-tinting.[2]

Even if the totality of facts were insufficient to satisfy probable cause or reasonable suspicion, Officer Williams' belief that they were was objectively reasonable, and therefore protected by qualified immunity. Certainly no clearly established case law holds that the combination of these facts is not enough; and many cases find probable cause where the police draw comparable inferences from facts of comparable suggestiveness. *See, e.g., Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (holding that officer's stop was reasonable where the individual in question was in a high crime area, demonstrated nervous and evasive behavior, and attempted to run away upon seeing the police); *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (holding that officer's stop was reasonable where vehicle turned off of a highway near the Mexican border just before the last checkpoint and the officer learned that the vehicle was registered to a town near the border that was notorious for alien and narcotic smuggling).

Suspicious circumstances may have innocent explanations; but the availability of an innocent explanation does not create an issue of fact as to the reasonableness of the suspicion. *Arvizu,* 534 U.S. at 278, 122 S.Ct. 744. We therefore reverse the denial of summary judgment with respect to

the traffic stop and direct that summary judgment be entered for defendants-appellants.

**B. The Attempted Pat–Down**

 Even after a lawful traffic stop, the Fourth Amendment protects against warrantless searches absent "specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). One such exception is consent by the party whose property or person is to be searched. *United States v. Elliott,* 50 F.3d 180, 185 (2d Cir. 1995). Another exception is if "during the course of a lawful investigatory detention, the officer reasonably believes that the detained individual might be armed and dangerous." *State v. Trine,* 236 Conn. 216, 223–224, 673 A.2d 1098 (1996); *see also Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.").

 Here, the driver of the car gave her consent to search the car. The district court concluded, however, that there were genuine issues of fact as to the scope of the driver's consent, specifically, whether she consented to the removal and pat-down of her passenger. The scope of the driver's consent may be a disputed issue,

---

**2.** The tinted windows alone would justify the stop if they were so dark that an officer, acting reasonably, would have suspected that there was a traffic violation. *See United States v. Wallace,* 213 F.3d 1216, 1220 (9th Cir.2000) ("We don't call upon the officers to be scientists or carry around and use burdensome equipment to measure light transmit-

tance, nor do we expect them to discuss the sufficiency or insufficiency of the light transmittance as if they were an expert witness on the subject.") (internal citation omitted). The Record is unclear on this subject, however, and so we decline to rest our decision on this sole ground.

but it is not a material one. Under *Maryland v. Wilson*, the officers were permitted to request that Holeman step out of the car regardless of whether the officers could search the car. 519 U.S. 408, 414–15, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) ("[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop."). Considering the totality of the circumstances, once Holeman was out of the car, the officers were justified in performing a pat-down. *Adam v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (holding that a pat-down is reasonable to "allow the officer to pursue his investigation without fear of violence"); *see also United States v. Paulino*, 850 F.2d 93, 98 (2d Cir.1988) (holding that "furtive movement provided a legal basis for the protective search"). In the middle of the night, the police were in a high crime area with a convicted narcotics felon who was acting suspiciously. These facts alone suffice to support reasonableness. *Id.* at 98; *United States v. Thomas*, 363 F.Supp.2d 84, 91–93 (D.Conn.2005); *see also Arvizu*, 534 U.S. at 274, 122 S.Ct. 744 ("[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."). We therefore reverse the denial of summary judgment with respect to the attempted pat-down, and direct that summary judgment be entered for defendants-appellants.

## C. The Use of Deadly Force

■■■ The question whether the police have qualified immunity for a use of

deadly force is likewise governed by the standard of objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The district court held that there are genuine issues of material facts regarding whether Darrel Holeman complied with the police officers' commands and whether he possessed the silver handgun. The extent of any compliance would be immaterial if Holeman drew a handgun, however, and the district court does not point to record evidence supporting the Plaintiffs–Appellees' theory that the silver handgun was planted by the police (no such evidence jumps out).[3] But we lack jurisdiction to review the district court's ruling with respect to the use of deadly force because the ruling is premised on the genuineness of a dispute about a material fact. In an interlocutory appeal of a qualified immunity claim, where the parties dispute material facts, the issue of whether there is sufficient evidence to support plaintiff's version of the material facts is within the province of the district court. *See Escalera*, 361 F.3d at 743 ("Our review extends to whether a given factual dispute is 'material' for summary judgment purposes, ... but we may not review whether a dispute of fact identified by the district court is 'genuine.' "). We therefore dismiss the appeal with respect to Officer Garcia's use of deadly force.

## D. The Post–Shooting Use of Force

■■■ As to the post-shooting use of force, the district court likewise concluded

---

**3.** Officer Garcia testified that Holeman had a silver handgun and drew it. That testimony was corroborated by Officer Williams, the driver, by another eyewitness, and by three other witnesses who had seen Holeman with a small gun, including a lifelong friend who described it as a small handgun—just the kind of thing the ambulance attendants found near

or under Holeman. It is possible that the district court relied on the absence of identifiable fingerprints on the handgun, and on plaintiffs-appellees' argument impugning the credibility of the driver. We express no view as to the sufficiency of such arguments to defeat summary judgment.

that material facts were genuinely in dispute—*i.e.*, whether Holeman possessed the silver handgun and whether he presented a continued threat after being shot—and therefore the court denied summary judgment. We lack jurisdiction to review that ruling for the same reason we lack jurisdiction to review the denial of summary judgment on the use of deadly force.

For the foregoing reasons: as to the initial traffic stop and the attempted pat-down, we direct that summary judgment be entered in favor of defendants; as to the use of deadly force and use of post-shooting deadly force, we dismiss this appeal for lack of jurisdiction.