**UNITED STATES of America,
Appellant,**

**v.**

**Francisco PAULINO,
Defendant–Appellee.**

**No. 833, Docket 87–1533.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 10, 1988.

Decided June 23, 1988.

Paul G. Gardephe, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., John F. Savarese, Asst. U.S. Atty., New York City, of counsel), for appellant.

Robert E. Precht, New York City (The Legal Aid Society Federal Defender Services Unit, New York City, of counsel), for defendant-appellee.

Before LUMBARD and CARDAMONE, Circuit Judges, and LEISURE, District Judge.*

CARDAMONE, Circuit Judge:

The sole issue presented on this appeal is whether counterfeit currency discovered during a warrantless protective search of a vehicle should be suppressed. The scope of the automobile exception to the Fourth Amendment sheds light on the answer to that question. Unlike what Sir Edward Coke said about a man's house, a man's automobile is not his castle. Castles are not readily moveable or subject to inspection and regulation, and their occupants do not ordinarily pose a threat to the safety of police officers acting in the normal course of their duty. The lowered expectation of privacy in an automobile provides a backdrop for our conclusion that the passenger lacked a reasonable expectation of privacy in that portion of the automobile searched.

I

On a drizzly, foggy August night in 1987 two New York City Police officers in a prowl car were patrolling the Washington Heights section of Manhattan when they came upon a car double-parked on 173rd Street near Fort Washington Avenue, a neighborhood plagued by a high incidence of drug-trafficking and robberies. Pulling alongside the vehicle, Police Officer Erbetta, riding with Officer Kennedy, asked the driver—later identified as Jose Diaz, the owner—what he was doing there. Upon receiving the noncommittal response, "hanging out," Diaz was asked to produce his license, registration, and insurance card. Two passengers were seated in the car—one in front, and the defendant, Francisco Paulino, alone in the rear behind the driver. As Officer Erbetta was requesting

proof of ownership, he observed Paulino in the back seat moving his torso and bending over as if placing an object on the floor. It was dark out and the officer was unable to see Paulino's hands or the object. As Officer Erbetta later discovered defendant had been holding a doubled-over packet of 21 counterfeit $50 federal reserve notes, plus a few other bills. Paulino placed the bills under an opaque rubber mat on the floor of the back seat and put his feet on the mat.

Seeing Paulino's furtive movement, the officer ordered all three occupants out of the car and, using his flashlight, searched it. He searched the front, looking under the floor mats, and then the back. When Officer Erbetta lifted the rubber mat on the rear floor, he saw the packet of bills, picked them up, observed that they had identical serial numbers, and concluded that they were counterfeit. At the time, Paulino denied that the packet belonged to him, as did his two companions. Paulino was then placed under arrest.

Later, he was charged in a one-count indictment with possessing counterfeit United States currency in violation of 18 U.S.C. § 472 (1982). At a hearing on defendant's motion to suppress, held on December 8, 1987 in the United States District Court for the Southern District of New York (Stanton, J.), the district court concluded that the search which uncovered the counterfeit money and its seizure by the police was unreasonable. Paulino contended at the hearing both that he knew the money was counterfeit and that the money was his property. In an oral opinion delivered at the conclusion of the suppression hearing, the district judge found the above recited facts and granted defendant's motion to suppress the evidence upon the following conclusions of law: (1) Police Officer Erbetta had reasonable cause to examine the automobile's interior after seeing defendant's motion that might signal the presence of a weapon; (2) the money was not in plain view and the officer's lifting of the mat and searching required probable cause; (3) Paulino's placement of the bills

* Honorable Peter K. Leisure, United States District Judge for the Southern District of New York, sitting by designation.

under the mat created a place where he enjoyed a reasonable expectation of privacy that gave him standing to object to the search; and (4) there was no probable cause under the circumstances for the police to search under the mat. The United States appealed pursuant to 18 U.S.C. § 3731 (Supp. IV 1986). We reverse.

## II

The question before us is whether the district court correctly concluded that Paulino had created a place where he enjoyed a reasonable expectation of privacy by placing the packet of counterfeit bills under the rubber mat on the back seat floor. Recognizing such a reasonable expectation of privacy, Judge Stanton found that the money was not in plain view and therefore the lifting of the rubber mat and the search under it required probable cause. Even though we agree substantially with the district court's analysis of the search itself, we are unable to adopt its conclusion granting suppression of the counterfeit money. We reverse because Paulino had no reasonable expectation of privacy in the area of Diaz's vehicle that was searched.

Normally, a determination by a district court as to whether an act, or belief, or in this case, an expectation, is "reasonable" is a conclusion of law subject to plenary review. *See United States v. Shakur,* 817 F.2d 189, 196 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 128, 98 L.Ed.2d 85 (1987); *United States v. Ceballos,* 812 F.2d 42, 46–47 (2d Cir.1987). The district court made explicit findings of fact, not challenged by either party, which appear to be exclusively in favor of appellee. We undertake plenary review of this case in light of the undisputed facts.

### A. *Automobile Exception in Fourth Amendment Analysis*

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." The cornerstone of current Fourth Amendment analysis is *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507,

19 L.Ed.2d 576 (1967). The Supreme Court there repeated " 'that the mandate of the [Fourth] Amendment requires adherence to judicial processes,' and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Id.* at 356, 88 S.Ct. at 514 (brackets in original) (citations omitted) (quoting *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951)).

One of these exceptions is the so-called automobile exception. Over 60 years ago the Supreme Court recognized an exception to the Fourth Amendment's warrant requirement in the case of an automobile possibly carrying contraband, reasoning that a warrantless search of such a vehicle is not necessarily an "unreasonable" search because the vehicle is so quickly moveable. *Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925). Later, a second rationale developed to distinguish motor vehicles from homes based on the lesser expectation of privacy in an automobile, which is normally used for transportation and not for the purpose of storing individual belongings. *Cardwell v. Lewis,* 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974) (an automobile "seldom serves as one's residence or as the repository of personal effects.").

More recently, in *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the Court relied upon both of these rationales in upholding a warrantless search of a motor home. The first justification for the Court's holding hinged on the vehicle's mobility "in a setting that objectively indicates that the vehicle is being used for transportation." *Id.* at 394, 105 S.Ct. at 2070–71. The second justification was the reduced expectation of privacy in a motor vehicle, based on the fact that much of the automobile is in "plain view" and that automobiles are subject to "pervasive regulation." *Id.* at 391–92, 105 S.Ct. at 2069; *see also South Dakota v. Opperman,* 428 U.S. 364, 367–68, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976) (describing

both lesser privacy prongs); *Cady v. Dombrowski*, 413 U.S. 433, 441–42, 93 S.Ct. 2523, 2528–29, 37 L.Ed.2d 706 (1973) (discussing plain view rationale). These rationales differentiate a home from an automobile for Fourth Amendment purposes; given similar circumstances, a person's expectation of privacy in a car is far less than the expectation of privacy in his home or as the guest in the home of another.

The foregoing discussion of the automobile exception is limited but relevant. It is relevant because it provides the background essential to recognizing that a passenger in an automobile has a lesser expectation of privacy than a guest in another's home. It is limited because this case involves a protective search of an automobile without probable cause, rather than a warrantless search with probable cause. In the latter case, courts applying the automobile exception are concerned only with whether the search involves an automobile, one of its integral parts, or a sufficiently similar vehicle. If the space searched meets this criteria then, provided probable cause exists, the inquiry ends. *See California v. Carney*, 471 U.S. at 394–95, 105 S.Ct. at 2070–71. But, when the search is of a vehicle without probable cause, as here, the automobile exception provides no answer as to whether a defendant has a claim or whether the police actions are justified under the Fourth Amendment.

**B. *Paulino's Fourth Amendment Rights***

We turn then to whether Paulino had a reasonable expectation of privacy in the particular automobile in which he was a passenger. The government urges that appellee had no such reasonable expectation and thus lacked standing to challenge the search of Diaz's vehicle. Appellee asserts standing to contest the seizure of what he acknowledged at the suppression hearing was his property.

The Supreme Court has observed that analyzing the question of standing, as a preliminary matter, before reaching the substantive merits of a Fourth Amendment claim complicates rather than aids analysis. *See Rakas v. Illinois*, 439 U.S. 128, 133, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). Instead, "the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." *Id.* at 139, 99 S.Ct. at 428; *see United States v. Salvucci*, 448 U.S. 83, 87 n. 4, 100 S.Ct. 2547, 2551 n. 4, 65 L.Ed.2d 619 (1980). *Rakas* simply translated the standing inquiry into the threshold question of whether a defendant has a cognizable Fourth Amendment claim. *See United States v. Smith*, 621 F.2d 483, 486 (2d Cir.1980), *cert. denied*, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981). For that reason, we focus on Paulino's claim that his own rights under the Fourth Amendment were infringed by the police officer's actions on that August 1987 night.

In discussing his claim, certain propositions of law guide us. When considering a claimed violation of Fourth Amendment rights, the burden is on the defendant to establish that his own rights under the Fourth Amendment were violated. *See Rakas*, 439 U.S. at 134, 138–39, 99 S.Ct. at 428; *United States v. Smith*, 621 F.2d at 486 (Fourth Amendment rights may not be "vicariously asserted"). Further, *Katz* observed that "the Fourth Amendment protects people, not places." 389 U.S. at 351, 88 S.Ct. at 511. From that proposition, the Supreme Court reasoned it is a person's legitimate expectation of privacy in the space invaded that is critical. *See Rawlings v. Kentucky*, 448 U.S. 98, 104–05, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *United States v. Rahme*, 813 F.2d 31, 34 (2d Cir.1987); *United States v. Smith*, 621 F.2d at 486. For example, what is knowingly exposed to the public through an open door or window in a home or office is not entitled to Fourth Amendment protection; on the other hand what a person, even in a public place, tries to keep private may be entitled to such protection. *Katz*, 389 U.S. at 351–52, 88 S.Ct. at 511. Moreover, neither ownership of an item nor possession of it—both absent in *Rakas*—is alone sufficient to establish a legitimate expectation of privacy. *Rahme*, 813 F.2d at 34; *see Salvucci*, 448 U.S. at 91–93, 100

S.Ct. at 2552–54. For example, *Katz* held that the petitioner had a legitimate expectation of privacy in a partly enclosed glass telephone booth. 389 U.S. at 352, 88 S.Ct. at 511.

 Paulino argues that he had a reasonable expectation of privacy in the area of the vehicle searched. The inquiry of whether such an expectation of privacy exists raises two separate questions. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *United States v. Roy*, 734 F.2d 108, 110 (2d Cir. 1984). First, the person challenging the search must demonstrate a subjective desire to keep his or her effects private; and, second, the individual's subjective expectation must be one that society accepts as reasonable. *California v. Greenwood*, — U.S. ——, ——, 108 S.Ct. 1625, ——, 100 L.Ed.2d 30 (1988); *Smith*, 442 U.S. at 740, 99 S.Ct. at 2580. Here, the counterfeit bills were hidden under the rubber mat and Paulino put his feet on it, clearly evidencing his desire to keep these items private. Later, he admitted ownership. We believe, as the district judge apparently did, that Paulino had demonstrated a subjective expectation of privacy at the time of the seizure of his property.

But appellee's claim of privacy founders on the second, objective prong of the inquiry. Although Paulino concededly had a possessory interest in the counterfeit money, that is only one factor considered when determining whether his Fourth Amendment rights have been violated. *See Rawlings*, 448 U.S. at 105–06, 100 S.Ct. at 2561–62. Other factors militate strongly against holding that he had a legitimate expectation of privacy as a passenger in Diaz's automobile. Paulino had only known Diaz for one week. As a passenger he had no right to exclude others from the vehicle. He secreted the counterfeit bills in a hurried and furtive manner while the police were questioning the driver. *See id.* at 104–06, 100 S.Ct. at 2561–62 (no expectation of privacy where petitioner had only known owner of purse for few days, was without right to exclude others from access to it, and where manner in which petitioner stuffed drugs into the owner's purse was precipitous).

Unlike the circumstances in *Katz* and *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) (Jones, apart from a friend who gave him the key to the apartment, had control over the apartment to the exclusion of others), we are unprepared to hold that Paulino's expectation of privacy is one that society willingly accepts as reasonable. To state it another way, Paulino's expectation, viewed objectively, is not justifiable under the circumstances. *See Smith v. Maryland*, 442 U.S. at 740, 99 S.Ct. at 2580.

### III

 Because the district court made explicit rulings concerning the scope of Paulino's Fourth Amendment claim and both parties misunderstand the limits of the protective search in the instant case, it is necessary to discuss briefly whether Officer Erbetta needed probable cause to lift the mat and search the items he found under it.

The district court concluded that the police officer "had reasonable cause to look into the interior of the car after" observing Paulino's furtive movement that "might signal the presence of a weapon." It follows that the officer acted well within his authority to inquire of the occupants of the car what they were doing in double parking in that particular area, and to conduct a close observation of the occupants. This was a protective search conducted for the personal safety of Officer Erbetta and his partner as well as passersby on the street. In general, "protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983). Thus, as Judge Stanton held, Officer Erbetta's articulable concern for his safety justified the examination of the interior of the Diaz vehicle.

Yet, the scope of a search must be limited to the purpose that initially authorized

the intrusion. *See Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968) (search for weapons of a person must be so limited). Similarly, an officer's protective search of an automobile must be "limited to those areas in which a weapon may be placed or hidden...." *Michigan v. Long*, 463 U.S. at 1049, 103 S.Ct. at 3481. At the precise point in the search where justification for the warrantless search ends, any further search must be supported by probable cause. Paulino's furtive movement provided a legal basis for the protective search. It would be anomalous to rule that the officer could not examine that area of the vehicle where the activity which originally justified the protective search occurred. Consequently, it was not an unreasonable search under the Fourth Amendment for Officer Erbetta to lift the rubber mat in the rear of Diaz's auto.

But upon lifting the mat the officer did not discover a weapon. Instead, he saw a packet of money. At this point—absent probable cause—he had no basis to take any further action. *See Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). As *Hicks* makes clear, probable cause is required to move an object for purposes of a search—no matter how seemingly minor is the invasion of an individual's possessory interest—beyond the justified bounds of the lawful search. *Id.* 107 S.Ct. at 1153. Probable cause must exist prior to the extended search, not after its completion. Here there was no probable cause to pick up and examine the bills. Physical inspection of the bills would have been justified on alternative grounds if visual inspection revealed that they were patently counterfeit, i.e., the visible portion of the bills was miscolored or plainly misprinted. Further, if instead of these counterfeit bills, drugs or weapons had been revealed in plain view, they could have been legally searchable and seizable. However, absent either probable cause or self-evident contraband the search and seizure of these bills was unjustified. Nonetheless, even having so concluded, the search is not a violation of Paulino's Fourth Amendment rights since he failed to carry the burden of demonstrating that he had a reasonable expectation of privacy in the area searched.

## IV

Accordingly, the order granting suppression is reversed and the matter is remanded to the district court for further proceedings.

Reversed and remanded.

LUMBARD, Circuit Judge, concurring:

The police officers acted reasonably throughout, from their initial questioning of the occupants of the automobile to the seizure of counterfeit money found under the floor mat.

When the officers saw the car double-parked on 173rd Street in Washington Heights, they asked the occupants what they were doing there. The answer of the driver, Jose Diaz, that they were just "hanging out" justified officer Erbetta's request that Diaz produce his license, registration and insurance card. During this exchange with Diaz, Erbetta saw Paulino, the sole occupant of the backseat, bend over as if he were putting something on the floor.

The Washington Heights area is known as a high crime area. Under the circumstances, questioning the occupants of the car necessarily involved some danger to the police and passersby. Thus, it was reasonable for the police to determine whether the occupants had any concealed weapons.

It was a dark, drizzly, and foggy night and in order to find out what might be concealed in the car, Erbetta ordered all three occupants out of the car and searched the front and backseat areas. When Erbetta lifted the rubber mat where Paulino had been sitting, he found a doubled-over packet of twenty-one $50 bills. Under the circumstances, the finding of the packet raised the reasonable suspicion that the bills might be counterfeit. Had the bills been legitimate money, Paulino would hardly have had any purpose in hiding them when the officers approached the car. From a cursory examination, Erbetta could see that the bills were counterfeit.

Consequently, I conclude that Erbetta only performed his clear duty as an officer

of the law when he examined the bills in order to confirm or allay his suspicions. The seizure was lawful and should stand. Each step taken by the police led inevitably to the next step. Having every reason to believe that Paulino had hidden something he wanted the police to not know about there was good reason for Erbetta to find out what it was. Having examined the package it was Erbetta's duty to seize the counterfeit money.

Police action at night on a busy public thoroughfare in a high crime area requires the measures which the police took. There are no considerations of public policy which make it advisable for the courts to suppress evidence seized under such circumstances in order to discourage such seizures. *Compare Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). I believe that by any standard the action was reasonable.

For these reasons, I concur in reversing the order of the district court which suppressed the evidence.