UNITED STATES of America

v.

Elvis Espinosa ZABALA, a/k/a "Elvis Zabala," a/k/a "Elvis Espinosa," Dancalis Mercedes Garcia, a/k/a "Marisa Espinosa," Louis Rafael Ortiz–Pujols and Gil Manuel Pena–Carrion, a/k/a "Bienvenido Duglas," Defendants.

No. 98 CR. 0702 BDP.

United States District Court, S.D. New York.

May 28, 1999.

Cari S. Robinson, Bart G. Van De Weghe, Asst U.S. Attys., United States Attorney's Office, White Plains, NY, for United States of America.

Scott H. Greenfield, New York City, for defendant Zabala.

Bruce K. Kaye, New York City, for defendant Garcia.

Roger L. Stavis, New York City, for defendant Ortiz–Pujols.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Defendants Zabala, Garcia and Ortiz–Pujols had moved *inter alia* to suppress physical evidence and statements made following their arrest on April 14, 1998. The motions were referred to the Honorable George A. Yanthis U.S.M.J., who, in a Report and Recommendation dated February 4, 1999, recommended that the motions be denied in their entirety. Familiarity with the Report is presumed. The defendants filed timely objections to the Report and Recommendation. Accordingly, this Court reviews *de novo* the findings and recommendations to which objections have been made. *See* 28 U.S.C. § 636(b)(1)(C).

Specifically, Judge Yanthis made the following recommendations to which objections have been lodged:

1. He recommended against suppression of a duffel bag containing $310,000 in cash seized on April 14, 1998 on the ground that defendants Zabala and Ortiz–Pujols were initially detained pursuant to a valid *Terry* stop and, in any event, abandoned the duffel bag;

2. He concluded that an initial entry on April 14, into apartment 7G at 143 Bruce Avenue, Yonkers, New York, was consensual and that an ensuing security sweep was proper;

3. He concluded that a search later of apartment 7G pursuant to a warrant was proper and recommended that the items seized during that search should not be suppressed;

4. He concluded that subsequent searches, building on the information obtained from the Bruce Avenue search, occurred pursuant to valid warrants;

5. He concluded that statements made by Zabala and Ortiz–Pujols disclaiming ownership of the duffel bag were admissible and that statements made by defendant Garcia at the police station, as well as statements made between her and Zabala, should not be suppressed; and

6. He concluded that defendants' severance motion should be denied.

The Court's resolution of defendants' various objections follows.

Defendants Zabala and Ortiz–Pujols take sharp exception to Judge Yanthis' refusal to suppress the duffel bag and, in particular, his conclusion that their stop on Bruce Avenue and subsequent restraint constituted a *Terry* stop. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Defendants, in essence, argue that the circumstances of the encounter, especially the level of force and restraint employed by the arresting officers exceeded what is permissible under *Terry.* Defendants also point to the fact that earlier on the day of their arrest, the investigating officers met and planned to stop and search them if they were again seen moving apparently full duffel bags from Bruce Avenue. This constellation of factors, according to the defendants, amounted to a full-blown arrest, not a *Terry* stop.

■ As an initial matter, the government contends that each of the defendants has failed to establish standing to contest the search of the duffel bag. It is well established that "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois,* 439

U.S. 128, 130 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). To meet this test a defendant may establish the existence of rights protected by the Fourth Amendment by showing (a) that he enjoyed an expectation of privacy that society is prepared to recognize as reasonable, and (b) that he conducted himself and dealt with the property in a way that indicated a subjective expectation of privacy. *United States v. Perea,* 986 F.2d 633, 639 (2d Cir.1993); *California v. Greenwood,* 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). It is reasonably well established that one need not be the owner of the property for the privacy interest to be one that the Fourth Amendment protects, so long as one has the right to exclude others from dealing with the property and conducts oneself in a manner consistent with these expectations. It is also clear that a person who possesses personal property belonging to another, and who has a right to exclude third persons from possession of that property, has a protected interest in the property. *United States v. Perea,* 986 F.2d at 640; *United States v. Ochs,* 595 F.2d 1247, 1253 (2d Cir.1979).

In their initial motions to suppress, the sole averment relating to standing by defendant Ortiz–Pujols was that "At no time did I consent or give permission for the police to search the duffel bag found in the trunk of the maroon Lincoln Town Car (N.Y. Registration T1788787C)." Zabala, on the other hand, tendered no substantive affidavit or other testimony of his own to attempt to establish standing but, in a cursory fashion, merely adopted the lengthy recitation of the purportedly relevant facts in his counsel's affidavit.

At the Court's invitation, standing was revisited at a May 19, 1999 hearing at which both Zabala and Ortiz–Pujols testified to supplement the record. Zabala testified that he "possessed a duffel bag and the money inside of it" and placed it in the trunk of the car. Ortiz–Pujols similarly testified, in response to his counsel's question as to what he "possessed" imme-

diately prior to his arrest, "yes, a duffel bag."

The government asserts that these allegations are insufficient, absent a showing that the defendants either owned the Lincoln Town Car from which the duffel bag was seized, the duffel bag itself, or the contents of the bag. It is the government's position that the defendants aver no more than mere possession and "a person in legal possession of goods seized during an illegal search has not necessarily been subject to a Fourth Amendment depravation." *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). In sum, the government insists that this case is not reasonably distinguishable from the cases denying standing on the basis of mere possession. The government notes the absence from the record of any evidence of how the defendants came to be in possession of the bag, and what their relationships to, or expectations about, the bag were, relative to its owner, or of any other evidence establishing bailment. *United States v. Perea,* 986 F.2d 633, 636 (2d Cir.1993); *United States v. Paulino,* 850 F.2d 93, 96–97 (2d Cir.1988). While the question is not free from doubt, the Court concludes that defendants Zabala and Ortiz–Pujols have established the requisite standing.

It is undisputed that the two defendants carried an apparently closed duffel bag and proceeded to place the duffel bag inside the Lincoln Town Car. The defendants contend that police testimony regarding the manner in which the defendants carried the bag evidenced a consciousness of surveillance and demonstrated the defendants' intention that the bag and its contents be regarded as their property, concealed from public scrutiny. They contend that this conclusion is reinforced by the fact that they immediately placed the bag in the trunk of the car, which was then closed, and that the record is devoid of any indication that between 143 Bruce Avenue and the Lincoln Town Car they abandoned the bag,

showed its contents to anyone or left it unattended. On the strength of these circumstances, the Court concludes that the defendants enjoyed a reasonable expectation of privacy in carrying luggage from their apartment to a car and that their conduct evidenced a subjective expectation of privacy. Accordingly, the Court concludes that Ortiz–Pujols and Zabala have standing to contest the search.

As previously noted, the Magistrate Judge concluded that Zabala and Ortiz had been subject of a *Terry* stop and also concluded that at the time of the *Terry* stop there was no probable cause to arrest the defendants. With deference to the Magistrate's Report on these close questions, the Court disagrees with, and declines to follow both recommendations.

■ The Fourth Amendment prohibits unreasonable searches and seizures. *Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 619, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). While a search generally may not be conducted without a warrant issued upon a showing of probable cause, exceptions to these requirements exist. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) created the exception at issue here and authorized a limited stop of suspicious individuals. *See Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Under *Terry* a police officer is free to approach a person in public and ask questions while taking objectively reasonable steps to protect himself and others in view of the dangers that the officer's judgment and experience indicate might exist. These steps may be taken without a seizure occurring. *See Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Barrios–Moriera,* 872 F.2d 12, 15 (2d Cir.1989).

■ But the Supreme Court has also cautioned that the exception has a "narrow scope," that it has been careful to maintain. *Ybarra v. Illinois,* 444 U.S. 85, 93,

100 S.Ct. 338, 62 L.Ed.2d 238 (1979). If the confrontation is a seizure rather than a *Terry* stop, the Fourth Amendment's protections are implicated and probable cause is required. *INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). A seizure does not occur simply because a police officer approaches an individual and asks a few questions. *Florida v. Bostick*, 501 U.S. 429, 433, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Rather "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[E]ven when officers have no bases for suspecting a particular individual, they may generally ask questions of that individual, ask to examine his identification and request consent to search his or her luggage as long as the police do not convey a message that compliance with their requests is required." *Bostick*, 501 U.S. at 434–435, 111 S.Ct. 2382 (internal citations omitted). Defining the line between a seizure and a *Terry* stop involves an objective assessment of the overall coercive effects of police conduct. *See United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

■ Having reviewed the record, the Magistrate's Report and the parties' objections to them, the Court concludes that the official conduct in question constituted an arrest, not a *Terry* stop. *See United States v. Mendenhall*, 446 U.S. at 551–553, 100 S.Ct. 1870; *United States v. Moreno*, 897 F.2d 26 (2d Cir.1990); *United States v. Tavolacci*, 895 F.2d 1423 (D.C.Cir.1990). A number of factors lead to this conclusion: (1) a number of officers assembled on April 14 planning to stop and search the defendants if they were seen carrying bags, which the officers believed contained either contraband or drugs; (2) the stop was not a tentative or investigatory confrontation since the defendants were immediately confronted with drawn guns, re-

moved from the car, required to lay down and handcuffed; (3) the language, tone and conduct of the officers unquestionably indicated that the defendants were under arrest and that full and immediate compliance with all instructions was compulsory; and (4) the individuals were, in fact, promptly taken into custody.

■ The government suggests that any analysis of the propriety of the stop under *Terry* is not necessary since probable cause existed to arrest Zabala and Ortiz–Pujols, and following their arrest the bag was "abandoned." It is well established that "[p]robable cause to arrest a person exists if the law enforcement official, on the basis of the, totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir.1990). It is important to note that probable cause requires neither a *prima facie* showing of criminal activity nor a showing that evidence of crime will, more likely than not, be found. *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir.1987). Further, probable cause requires only the possibility of criminal activity or the possibility that evidence of a crime will be found. *See Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Further, in determining whether probable cause exists, the experience and expertise of the law enforcement agents should be taken into consideration. *United States v. Perea*, 848 F.Supp. 1101, 1104 (E.D.N.Y. 1994).

■ Applying these principles to the facts adduced during the suppression hearing, this Court concludes that probable cause to arrest Ortiz–Pujols and Zabala existed. A number of weeks before the arrest, the police received anonymous information that Hispanic individuals were leaving apartment 7G at 143 Bruce Avenue carrying bags that contained either drugs or contraband and that one of the individu-

als participating in this activity was named "Elvis." The arresting officer partially corroborated this information by connecting Elvis Zabala to a car he garaged at 143 Bruce Avenue.

On March 23, 1998, an officer went to 143 Bruce Avenue and interviewed the maintenance man in the building who confirmed that they had received complaints about individuals carrying large and apparently heavy bags into, and out of, apartment 7G. On March 24, as the officers watched 143 Bruce Avenue, they observed two individuals carrying full looking duffel bags into and out of apartment 7G, placing them in an awaiting car and driving away in a suspicious, surveillance-conscious manner. On March 25 the officers saw Zabala and Garcia leave 143 Bruce Avenue in the company of another male carrying luggage. He was seen putting the luggage in the trunk of an awaiting black Mercedes Benz and driving off with Zabala and Garcia. By this time the officers had reasonably concluded that Garcia and Zabala either lived in 7G or frequented the apartment. These observations, again, partially confirmed the tip that the apartment was possibly being used for narcotics related activity. About a week later, on April 8, 1998, Garcia was observed discarding a garbage bag that contained what police concluded were cut paper money wrappers. On April 13 as the officers continued their surveillance, they observed Zabala and Ortiz–Pujols enter the apartment. Later that afternoon, two Lincoln Town Cars arrived and parked in front of the building. One of the cars was driven by defendant Pena. The cars waited in front of the apartment for a brief period until Ortiz–Pujols exited the building carrying a full looking duffel bag which he put into the trunk of one of the waiting cars. Based on their prior substantial experience in narcotics investigations, the officers believed that one of the Town Cars was carrying contraband and the other was serving as a security vehicle. The cars in question proceeded in tandem to Manhattan, again driving in a surveillance-con-

scious fashion. When they arrived in Manhattan Zabala exited the car, carried the bag which the officers believed to be contraband, to a building located at 1396 Third Avenue and then drove away.

That same night at approximately 6:00 p.m., the officers who had remained at Bruce Avenue, saw a Lincoln Town Car park in front of the building, followed by another Lincoln Town Car. The officers observed Ortiz–Pujols leave 143 Bruce Avenue with Garcia and a full duffel bag. Ortiz–Pujols placed the duffel bag into the trunk of one of the waiting cars. Garcia and Ortiz–Pujols then entered the car and drove off in tandem. Again, the next day, the police saw Zabala and Ortiz–Pujols leave 143 Bruce Avenue carrying a full duffel bag. The officers observed the defendants walk to the two waiting Lincoln Town Cars. Based on their prior observations, they reasonably concluded that one of them served as a security vehicle. After Ortiz–Pujols and Zabala placed the bag into the trunk of the car driven by Tavares, the police converged on the defendants and arrested them.

Giving the facts, the practical, common-sense evaluation the law requires, and in view of (1) the prior tip and the arresting officers' extensive experience with narcotics investigations, (2) the officers' reasonable understanding that narcotics activity occurred in the area in question, and (3) the highly suspicious behavior of the individuals in question, there was ample evidence to reasonably indicate "the possibility of criminal activity or the possibility that evidence of a crime will be found." This constellation of facts, objectively viewed, establishes probable cause. *See Perea*, 848 F.Supp. at 1104.

The fact that this behavior could be consistent with scenarios not involving criminal activity is not determinative since "innocent behavior frequently will provide the basis for a showing of probable cause.... In making a determination of probable cause the relevant inquiry is not

whether a particular conduct is 'innocent' or 'guilty', but the degree of suspicion that attaches to particular types of non-criminal acts." *Illinois v. Gates,* 462 U.S. 213, 245 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

■ Having determined that there was probable cause to arrest Zabala and Ortiz–Pujols, the Court concludes that the arresting officers, properly looked into and seized the bag found there. In *California v. Acevedo,* 500 U.S. 565, 580, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), the Supreme Court held that "the police may search an automobile and the containers within it where they have probable cause to believe evidence or contraband is contained." *See United States v. Ross,* 456 U.S. 798, 809, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (Fourth Amendment does not require the police to obtain a warrant to search a vehicle when they have probable cause to believe it contains contraband or evidence of criminal activity); *United States v. Harwood,* 998 F.2d 91, 96 (2d Cir.1993). More recently in *Wyoming v. Houghton,* —— U.S. ——, 119 S.Ct. 1297, 1304, 143 L.Ed.2d 408 (1999), the Supreme Court held that "police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search." *Accord, Florida v. White,* —— U.S. ——, 119 S.Ct. 1555, 143 L.Ed.2d 748, (1999) (May 12, 1999).[1] This conclusion is reinforced by the fact that, Tavares, the driver of the car gave the officers permission to search the trunk and Zabala and Ortiz disclaimed ownership of the bag. The defendants' argument that because the car was not mobile, the automobile exception is inapplicable, is without merit. The automobile exception has been applied flexibly, even when the automobile is not immediately mobile. *See California v.*

*Carney,* 471 U.S. 386, 391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) (exception applied to parked mobile home).

Defendants Zabala and Garcia next challenge the events surrounding the initial entry by police officers into apartment 7G at 143 Bruce Avenue. Garcia contends that the encounter in the hall did not constitute a valid *Terry* stop. She also contends that the officers did not obtain her voluntary consent to look into the apartment (prior to its search pursuant to a warrant they later obtained) and failed to advise her that she had a right to refuse consent.

As previously noted, Judge Yanthis concluded that Garcia voluntarily consented to permit the officers to enter apartment 7G during the course of a valid *Terry* stop. After Zabala and Ortiz–Pujols were detained, three officers went to the 7th floor at 143 Bruce Avenue. After Detectives Lyons, Moray and Negro arrived at the 7th floor, Detective Lyons remained there while Detective Moray and Negro left to secure a search warrant. While leaving the 7th floor, Detectives Moray and Negro encountered Garcia coming out of the elevator. The officers knew of Garcia's prior connection to the apartment and, as she exited the elevator, stopped her to question her to find out what her purpose was on the floor. Guns were not drawn. Garcia was not frisked, nor was she handcuffed or restrained in any manner.

■ Judge Yanthis correctly concluded that the government is required to demonstrate that the consent to search was voluntarily given and not the result of duress or coercion. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The test of voluntariness is whether the consent was a product of essentially free and unconstrained

---

1. Notwithstanding the automobile exception, the officers could have seized the duffel bag after Tavares' consent to open the trunk and held it until they obtained a search warrant. *Acevedo,* 500 U.S. at 575, 111 S.Ct. 1982. Further, "since the police, by hypothesis, have

probable cause to seize the property, we can assume that a warrant will be routinely forthcoming." *Id.* Thus, the evidence inside the bag would have been inevitably discovered. *See Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

choice and the question is one of fact to be determined from all the surrounding circumstances. *Id.* at 248–249, 93 S.Ct. 2041. The record reflects that Garcia opened the door to apartment 7G herself for the officers and consented to allow them to look inside. Detective Malone testified that Detective Moray asked Garcia if "we can take a look inside." Detective Malone did not hear Garcia's response but he saw her put the key in the door, turn the key and opened it. Detective Lyons testified that Detective Moray saw that Garcia was holding keys in her hand and asked her whether those were the keys to apartment 7G. Garcia answered yes. When asked whether she minded if the officers take a look inside Garcia answered affirmatively. Then Detective Lyons saw Garcia put the key in the door and unlocked the top lock, after which she turned the knob and started to open it.

■ On the basis of this record, Judge Yanthis concluded, and this Court agrees, that the government has demonstrated that the consent to the initial entry into 143 Bruce Avenue, apartment 7G, was voluntarily given by Garcia and was not a "mere acquiescence in a show of authority." *United States v. Wilson,* 11 F.3d 346, 351 (2d Cir.1993). Consent need not be expressed in any particular form but "can be found from an individual's words, acts or conduct." *United States v. Deutsch,* 987 F.2d 878, 883 (2d Cir.1993).

■ Once the apartment was opened, the investigating officers conducted a limited security sweep of the apartment during which they observed a large quantity of cash in plain view in the front room. Zabala and Garcia contest the validity of this sweep on the grounds that: (1) it was not incident to an arrest, and (2) in any event, there was no proper basis for the sweep.

The testimony at the hearing indicated that the arresting officers had a reasonable basis to suspect that additional individuals could be in the apartment. First, as previously noted, upon opening the door, the officers noted a large amount of cash and in addition, the officers heard noises apparently emanating from a television and saw lights on in the apartment. Detective Malone further testified that these observations caused significant concern that someone was inside of the apartment. Detective Malone testified that since the plan was to post officers outside the door while a search warrant was obtained, he believed that it would have been imprudent to leave officers in that position without knowing whether, in fact, the apartment was occupied. Moreover during their prior observations of activities surrounding the apartment, other individuals who had not been apprehended were seen in the company of those who had been leaving and entering the Bruce Avenue apartment. The officers also concluded that it was unlikely that large amounts of cash would have been left unattended. These factors justified the officers' apprehension that the apartment might have been occupied and, especially in light of Garcia's consent to the entry, justified the limited security sweep that occurred. *See United States v. Garcia,* 56 F.3d 418, 423 (2d Cir.1995); *United States v. Deutsch,* 987 F.2d 878 (2d Cir.1993).

■ Next, Zabala claims the search warrant for apartment 7G was not supported by probable cause. In determining whether a warrant was sufficiently supported by probable cause, the reviewing court considers the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A magistrate or judge deciding whether to issue a warrant is dealing with probabilities, not technicalities because "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of rules." *Id.* at 231, 232, 103 S.Ct. 2317. The reviewing court should show substantial deference to a probable cause determination made by a detached and neutral judge, resolving any doubts in favor of upholding the warrant.

*United States v. Rosa,* 11 F.3d 315, 326 (2d Cir.1993) (citing *United States v. Travisano,* 724 F.2d 341, 345 (2d Cir.1983)). Indeed, the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Illinois v. Gates,* 462 U.S. at 238–39, 103 S.Ct. 2317 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).

■ Contrary to the defendants' contention, the warrant's application, sworn to by Detectives Malone and DeLango establishes probable cause. It details the background of the investigation and the observations that the investigating officers made on April 13, as well as the events that transpired on April 14. The affidavit describes the circumstances under which the bag containing $300,000 was seized, as well as what was observed as a consequence of the security sweep of apartment 7G. The affidavit went on to detail the experience and background of the investigating officers and the basis for their belief that the apartment was being utilized as a "stash house" for the storage of U.S. currency and records generated during narcotics trafficking.

■ Once the search of 143 Bruce Avenue occurred, officers discovered various papers and other evidence which formed the basis of warrant applications to search additional locations in the Bronx as well as a safe deposit box and automobiles. Defendants challenge the sufficiency of the affidavits upon which these warrants were based. They have not, however, established standing to do so and the challenge must be rejected for this reason.

■ Next, Zabala, Ortiz–Pujol and Garcia seek to suppress statements made on April 14 and 15. Having reviewed the record herein, this Court finds that the statements that Zabala and Ortiz–Pujols made disclaiming ownership of the duffel bag, immediately after their seizure on April 14, were statements made while they were in custody and in the absence of proper *Miranda* warnings and for that reason are inadmissible. *Tankleff v. Senkowski,* 135 F.3d 235 (2d Cir.1998); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ Judge Yanthis concluded, as does this Court upon its review of the record, that the confrontation of Garcia in the hallway in front of 143 Bruce Avenue prior to her arrest was permissible under *Terry* since it amounted to an investigatory stop; that the statements made by Garcia at the police station between 8:30 p.m. and 4:30 a.m. are admissible since they were not the product of police coercion and followed *Miranda* warnings; that the statements made at the police department between Zabala and Garcia were voluntarily made in front of the police officers after *Miranda* warnings and were not the product of custodial investigation. Finally, Judge Yanthis concluded, as does this Court, that the so-called "reverse silver platter" doctrine has no application to this case and that Garcia's severance motion lacks merit and should be denied.

## CONCLUSION

The Report and Recommendation of Magistrate Judge Yanthis is adopted by this Court except to the extent objections have been sustained herein.

**SO ORDERED.**