IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANTHONY DALE, | § | |
| | § | No. 311, 2016 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | ID. No. 1306017883 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: December 7, 2016
Decided: January 31, 2017

Before **HOLLAND**, **VAUGHN**, and **SEITZ**, Justices.

## O R D E R

This 31st day of January 2017, upon consideration of the parties' briefs and the record of the case, it appears that:

1. The Appellant, Anthony Dale, appeals from the Superior Court's denial of his Motion for Postconviction Relief. He makes two claims on appeal. He claims that the Superior Court erred by finding he was not prejudiced by his trial counsel's failure to move for severance of charges that he was a Person Prohibited From Possessing a Firearm and Ammunition. His second claim is that the Superior Court erred in finding that he was not prejudiced by his trial counsel's failure to file a motion to suppress evidence.

2. On June 19, 2013, Officer Thomas Looney of the Wilmington Police

Department was on patrol. Around 10:30 p.m., he saw a man sitting in the passenger side of a silver Nissan Altima. The car was parked on the west side of the 2300 block of North Carter Street in Wilmington. The engine was not running. As Officer Looney passed the car, he saw Dale "lean[] from the passenger seat into the driver's seat with his hands down on the floor below the steering wheel . . . down below the seat to the driver's side floor."[1]

3. Finding Dale's conduct suspicious, Officer Looney circled the block multiple times. Each time he passed, he saw Dale lean his body in the same manner towards the driver side of the car. On the third pass of the car, Officer Looney pulled behind the Altima, turned on his high beams, and approached Dale.

4. Dale peered out the back window as Officer Looney approached the car. When Officer Looney reached the front passenger door, he saw Dale leaning to the driver's side with his head on the steering wheel and his hands on the driver's side floor. Officer Looney then shined his flashlight and tapped on the window to get Dale's attention. Dale appeared nervous. He sat up, opened the door, and gave the officer his identification card. At some point during the encounter, Officer Looney determined the car was not registered to Dale.

5. Detective David Ham and his partner came to assist Officer Looney. After

---

[1] App. to Appellant's Opening Br. at 32.

they arrived, Officer Looney asked Dale to step out of the vehicle. Officer Looney asked Detective Ham to check the driver's side area of the car. Detective Ham complied, noticed the floor mat was lifted, and found a loaded gun under the floor mat. Officer Looney also found two oxycodone pills on Dale after patting him down. The officers arrested Dale for Possession of a Firearm By a Person Prohibited, Carrying a Concealed Deadly Weapon, Possession of Ammunition By a Person Prohibited, and Aggravated Possession. The State dropped the Aggravated Possession charge prior to trial.

6. At trial, Dale stipulated, through counsel, that he was not permitted to possess a firearm or ammunition. The stipulation did not include the reason that Dale was prohibited, which was that he had a prior drug conviction. After a two day trial, a Superior Court jury found Dale guilty of all charges. The Superior Court sentenced Dale to four years of Level V incarceration followed by decreasing levels of supervision.

7. Dale filed a notice of appeal, but the appeal was later voluntarily dismissed. He filed a timely Motion for Postconviction Relief. In the motion, Dale claimed his trial counsel was ineffective for failing to move to sever the Person Prohibited charges from the Carrying a Concealed Deadly Weapon Charge and for not moving to suppress the gun the police found in the car.

8. A Superior Court Commissioner recommended that the court deny Dale's

Motion for Postconviction Relief.[2] A Superior Court Judge approved the Commissioner's Report and Recommendation.[3]

9. We review the Superior Court's denial of a Rule 61 motion for postconviction relief for abuse of discretion.[4] We review legal and constitutional questions *de novo*.[5]

10. To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong standard of *Strickland v. Washington*.[6] This test requires that he prove that trial counsel's performance was objectively unreasonable and that the defendant was prejudiced as a result.[7] Under the first prong, judicial scrutiny is "highly deferential."[8] Courts must ignore the "distorting effects of hindsight" and proceed with a "strong presumption" that counsel's conduct was reasonable.[9] The *Strickland* Court explained that "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."[10]

11. Under the second prong, "[i]t is not enough for the defendant to show that

---

[2] *State v. Dale*, 2016 WL 1613239 (Del. Super. Apr. 19, 2016).
[3] *State v. Dale*, 2016 WL 3365799 (Del. Super. June 15, 2016).
[4] *Neal v. State,* 80 A.2d 935, 941 (Del. 2013).
[5] *Brooks v. State*, 40 A.3d 346, 353 (Del. 2012).
[6] 466 U.S. 668, 686 (1984).
[7] *Id*. at 688, 694.
[8] *Id.* at 689.
[9] *Id*.
[10] *Id*. at 690.

4

the errors had some conceivable effect on the outcome of the proceeding."[11] In other words, "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."[12] "Some errors will have a pervasive effect . . . , and some will have had an isolated, trivial effect."[13] The movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[14] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[15] The "court must consider the 'totality of the evidence,' and 'must ask if the [movant] has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.'"[16]

12. Dale first argues that by counsel's stipulating that he was a Person Prohibited, the "jury was free to speculate as to why [he] was prohibited from possessing either a firearm or ammunition and to draw the impermissible conclusion that [he] was a person of bad character with a general criminal disposition."[17]

13. The Commissioner found that "Trial Counsel's failure to sever the Person Prohibited charge was objectively unreasonable—however, it did not prejudice

---

[11] *Id.* at 693.
[12] *Id.*
[13] *Id*. at 695-96.
[14] *Albury v. State*, 551 A.2d 53, 58 (Del. 1988) (quoting *Strickland*, 466 U.S. at 694).
[15] *Strickland*, 466 U.S. at 694.
[16] *Swan v. State*, 28 A.3d 362, 384 (Del. 2011) (quoting *Strickland*, 466 U.S. at 695-96).
[17] Appellant's Opening Br. at 15.

5

Dale."[18] The Commissioner reasoned that although there was a possibility that Dale would have been acquitted if the Person Prohibited charges had been severed, there was not a "reasonable probability of it."[19] We agree with this finding by the Commissioner that Dale failed to meet his burden to establish prejudice.

14. In reasoning that trial counsel's performance violated the first prong of *Strickland*, the Commissioner recognized that there may be cases where it makes sense for trial counsel to proceed as he did here, such as where it is expected that the defendant will testify and counsel knows the prior conviction may become admissible in the defendant's cross-examination as impeachment. The Commissioner further reasoned, however, that "[t]he Superior Court almost universally grants motions to sever such charges" and in this case he "[could] discern no reasonable trial strategy for not moving to sever."[20] Since we agree that Dale failed to satisfy the second prong of *Strickland*, we need not review the Commissioner's ruling on the first prong. We do caution, however, that there does not appear to be any prior case which establishes that severance is required on facts such as the ones involved here. Superior Court Criminal Rule 8(a) permits joinder of the Person Prohibited charges with other charges because they are "based on the same act."[21] Severance is

---

[18] *Dale*, 2016 WL 1613239, at *4.
[19] *Id.*
[20] *Id.* at *3.
[21] Del. Super. Ct. Crim. R. 8(a).

6

appropriate where the defendant can show prejudice from the joinder.[22]  Although it is true that Person Prohibited charges are frequently severed, it is also true that they are sometimes tried together with the other charged offenses.[23] Notwithstanding the frequency with which Person Prohibited charges are severed, a defendant making an ineffective assistance of counsel claim must show that joinder of the offenses was sufficiently prejudicial that it was objectively unreasonable for defense counsel not to move for severance.

15.  Dale next argues that because the police had no basis to search the vehicle, counsel was ineffective for failing to move to suppress the evidence obtained as a result of the search.  The Commissioner concluded that Dale was not prejudiced by trial counsel's failure to file a motion to suppress because "the search of the vehicle was justified on grounds of officer safety, and even if it was not, Dale lacked standing

---

[22] Del. Super. Ct. Crim. R. 14.

[23] E.g., *Rosser v. State*, 2016 WL 1436604, at *1, 3 (Del. Apr. 5, 2016) (defendant convicted of Carrying a Concealed Deadly Weapon, Possession of a Firearm by a Person Prohibited, and two counts of Possession of a Firearm during the Commission of a Felony and stipulated he was a Person Prohibited); *Thomas v. State*, 2015 WL 2169288, at *1 (Del. May 8, 2015) (defendant convicted of Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, and Carrying a Concealed Deadly Weapon, and defendant stipulated he was a Person Prohibited); *Green v. State*, 2015 WL 4351049, at *1, 2 (Del. July 14, 2015) (defendant convicted of Carrying a Concealed Deadly Weapon, Possession of a Firearm by a Person Prohibited, and Possession of Ammunition by a by a Person Prohibited, and the parties stipulated that the defendant was a Person Prohibited); *Morton v. State*, 2014 WL 7252046, at *1 (Del. Dec. 19, 2014) (jury acquitted the defendant of Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, and Carrying a Concealed Deadly Weapon even though defendant stipulated that he was a Person Prohibited).

to object to the search."[24]

16. Under currently existing law, a vehicle passenger generally does not have standing to challenge the seizure of an item found in a vehicle unless he shows that he owns the vehicle or exerts control over it.[25] Here, the vehicle was registered to another person who was not involved in the case. Dale was seated in the passenger's seat throughout the interaction with the police officers and did not exert control over the car. The Commissioner was correct in deciding that it is not reasonably probable that a motion to suppress would have been granted based upon officer safety or on currently existing law regarding standing.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

---

[24] *Dale*, 2016 WL 1613239, at *5.

[25] *Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978); *Mills v. State*, 2006 WL 1027202, at *1 (Del. Apr. 17, 2006) (the passenger in the car did not have standing to challenge the handgun and ammunition found in the trunk of the car because the passenger did not own the vehicle or exercise control over it); *see also United States v. Paulino*, 850 F.2d 93, 97 (2d Cir. 1988) (finding that a passenger lacked standing to challenge evidence found under the floor mat where he was sitting).